808 P.2d 1313

**STATE of Idaho, Plaintiff-Respondent,**

v.

**Eric RAMOS, Defendant-Appellant.**

**No. 17664.**

Supreme Court of Idaho,
Boise, October 1990 Term.

April 8, 1991.

Jonathan W. Cottrell, Sandpoint, for defendant-appellant.

Jim Jones, Atty. Gen., and James E. Leuenberger, Deputy Atty. Gen., Boise, for plaintiff-respondent.

BAKES, Chief Justice.

The State charged defendant Ramos with two counts of lewd conduct with a minor under age sixteen. The jury returned a verdict finding Ramos guilty on both counts. Ramos filed two separate motions for new trial. One argued that he had been improperly denied use of his peremp-

tory challenges. The other alleged that newly discovered evidence entitled him to a new trial. The district court denied both motions. Ramos appeals from the denials.

On October 19, 1987, Carol Schrader took her two daughters, Johanna and Shandi, 14 and 13 years old, to a psychologist at the Department of Health & Welfare for counseling for sexual abuse. The psychologist talked with the girls in his office while Mrs. Schrader waited outside. Following this visitation with Johanna and Shandi, the psychologist told Mrs. Schrader that sexual abuse is a matter that must be reported. Mrs. Schrader did not want to report the matter, stating her girls had asked her not to. The psychologist nevertheless set up an appointment for Mrs. Schrader with a case worker and a deputy sheriff at the Department of Health & Welfare. At that meeting the next day, the girls accused Eric Ramos, a neighbor, of being the person who had molested them. Criminal charges of lewd and lascivious conduct were filed against Ramos, leading to the filing of an information, the entry of defendant's plea of not guilty, and the setting of the case for trial.

During jury voir dire, three venirepersons—Edmiston, Peterson and Shadel—expressed a belief that Ramos was guilty by virtue of the fact that he was on trial, and that he would have to present evidence which dissuaded them of his guilt. Edmiston was excused on defendant's challenge for cause. The trial judge then read to the venirepersons an instruction dealing with the presumption of innocence and the burden of proof in criminal cases. Peterson continued to express the opinion that defendant would have to prove himself innocent. He was excused for cause. Shadel, upon subsequent questioning by the court, indicated his willingness to follow the instructions of the court. The defendant challenged Shadel for cause, but the trial court denied the motion. In completing jury selection, Ramos used one peremptory challenge to remove Shadel from the panel. He then used the balance of his peremptory challenges.

After the jury returned a verdict of guilty against him, Ramos filed two motions for new trial, one on the basis of the court's refusal to excuse Shadel. The motion was denied. Ramos appeals from the denial of this motion and from the court's refusal to excuse Shadel.

I

■ Regarding the first new trial motion, Ramos argues that he is entitled to a fair and impartial jury and that since Shadel had expressed his opinion that Ramos must be guilty of something or he would not be on trial, the trial court should have immediately excused him for cause. However, Shadel did not sit on the jury. Ramos removed him with one of his peremptory challenges.

Alternatively, Ramos argues that he was prejudiced because he was forced to use one of his peremptory challenges to excuse Shadel. Specifically, Ramos, citing this Court's holding in *State v. Dickens*, 68 Idaho 173, 191 P.2d 364 (1948), argues that his right to exercise the full complement of his peremptory challenges was impaired and that that alone was sufficient to warrant reversal. In *Dickens*, we noted that, "[I]t plainly appears, that the practical result of the disallowance by the court of defendant's challenge for cause ... was to contract the number of peremptory challenges to which he was entitled, and that such an error may have been seriously prejudicial to defendant." 68 Idaho at 177, 191 P.2d at 366 (*quoting People v. Weil*, 40 Cal. 268).

However, in *State v. Wozniak*, 94 Idaho 312, 486 P.2d 1025 (1971), we stated more recently that:

Appellant has further assigned error to the trial court's not excusing juror Nelson for cause. Juror Nelson was excused on the appellant's first peremptory challenge and did not participate in the trial. Thus the error, if any, claimed by the appellant in not excusing Nelson for cause, would have to be shown by the

fact that this resulted in one or more of the *other* jurors deliberating in the case who were biased. Appellants failed to establish this. On the contrary, the record demonstrates that fair and impartial jurors were available and selected to participate in the trial of the charge against appellant.

94 Idaho at 319, 486 P.2d at 1032 (emphasis in original). Our holding in *Wozniak* is inconsistent with our earlier statement in *Dickens. Wozniak,* as the most recent expression of this Court, has implicitly overruled the statement in *Dickens. Cf. Ross v. Oklahoma,* 487 U.S. 81, 108 S.Ct. 2273, 101 L.Ed.2d 80 (1988).

Applying the holding in *Wozniak* to the instant case, it is clear that Ramos made no showing in his motion for new trial that he was prejudiced by being required to use a peremptory challenge to remove Shadel. Ramos has not demonstrated, nor has he even suggested, that any of the other jurors remaining on the panel were not impartial or were biased. Thus, if there was any error, it was harmless. *State v. Wozniak, supra.*

## II

Defendant Ramos moved for a second time requesting a new trial on the basis that fabricated the charges against him as a cover-up to shield the real perpetrator of the crime, and (2) on the additional basis that such evidence also established that Carol Schrader had given perjured testimony at trial. The district court also denied that motion for a new trial. We will first address Ramos' allegation that perjury occurred at trial.

The factual basis for the motion was a letter sent to the judge after trial. One of the jurors, who worked at Kootenai Medical Center, noticed the chart of a 15–year–old girl named Johanna, whose home was in the same vicinity as that of Johanna Schrader. This Johanna had been admitted to the psychiatric floor of the hospital and reportedly had been sexually molested by her stepfather and by three other people. Concerned by this, the juror wrote to the trial judge. A copy of the letter was forwarded to counsel for both parties. Based on this letter, defense counsel made inquiry of both the juror and the hospital administrator. Thereafter, defense counsel subpoenaed the hospital administrator to produce at the scheduled sentencing date any records which the hospital might have pertaining to the admission and treatment of any person named Johanna during 1987 or 1988. The hospital responded by delivering records to the clerk of the court in a sealed envelope. That information revealed that the patient in question, Johanna Gemmrig, was in fact the same as Johanna Schrader, and that she claimed to have been molested by her grandfather during the summers of 1986 and 1987.

In support of the motion for a new trial, defendant subpoenaed the treatment records. The hospital holding the records delivered them to the district court, which reviewed them *in camera* and disclosed the relevant portions of the record to the parties, but denied defense counsel access to the records, declaring that such was done in order to safeguard the privacy of Johanna Schrader. Ramos appeals from the denial of access to the records.

Ramos contends that the trial court erred in refusing to allow him full access to the subpoenaed hospital records. However, the record reveals that the district court did release all relevant portions of the record. Moreover, the hospital records are now available to Ramos' attorney since they are an exhibit filed with the Supreme Court clerk. Ramos has not identified any relevant portions of the hospital records which were kept from his attorney prior to the second new trial motion hearing.

Ramos further argues that the mother of the two children, Carol Schrader, perjured herself at trial. At trial Ramos questioned Carol Schrader concerning any other sexual molestation of her daughters. At one point, Mrs. Schrader testified that

Johanna had reported one instance of molestation which occurred two years earlier, and that the report turned out to be unfounded. Ramos argues that Johanna Schrader's medical records disclosed that in the course of post-trial psychiatric treatment, Johanna stated that she had been molested by family members (including her grandfather) and that the molestation by the grandfather had continued until she reported it to her mother in the summer of 1987 (one to two months before the accusation was made naming Ramos). Ramos contends that this newly discovered evidence showed that Carol Schrader had committed perjury at trial, and he should therefore be entitled to a new trial.

■ Ramos contends that this Court should apply the test enunciated in *Larrison v. United States*, 24 F.2d 82 (7th Cir. 1928), adopted by this Court in *State v. Scroggins*, 110 Idaho 380, 716 P.2d 1152, *cert. denied* 479 U.S. 989, 107 S.Ct. 582, 93 L.Ed.2d 585 (1986), as the proper test to deal with new trial motions based on allegedly perjured testimony. The State, on the other hand, contends that the *Larrison* test is only applicable when the newly discovered evidence is the recantation of trial testimony by a prosecution witness. When the newly discovered evidence is any evidence other than the recantation of trial testimony by a prosecution witness, according to the State, the test used is the test set forth in *State v. Drapeau*, 97 Idaho 685, 551 P.2d 972 (1976). We need not resolve that legal issue because the trial court found that there was no perjured testimony. Perjury occurs when a witness has intentionally and deliberately misrepresented a state of affairs, knowing those affairs to be false. The record in this case supports the finding that there was not any intentional or deliberate misrepresentation of facts by Carol Schrader. The following is an excerpt from the dialogue that occurred at trial where defense counsel was questioning Mrs. Schrader:

> Q. On an earlier occasion she came to you and told you she had been sexually molested?

A. Yes.
Q. Is that correct?
A. Yes.
Q. How long ago was that?
A. Two years ago.
Q. That's two years ago from now. What I am trying to ask you, Mrs. Schrader, was it about a year and a half prior to the alleged events involving Eric Ramos?
A. I don't remember when she told me.

As can clearly be seen, Carol Schrader at one point said the incident occurred two years ago, followed by an admission that she couldn't remember when she had been told. The two statements are not necessarily contradictory or inconsistent. The statement, "How long ago was that?" could refer either to the time when the daughter had been molested, or the time that she told her mother. If the statement was that the molestation occurred two years ago, then that is not inconsistent with the subsequent statement that, "I don't remember when she told me." The district court judge who presided at the trial, and who had the benefit of observing the witnesses testify, concluded that there was no perjury, apparently concluding to interpret the two answers as (1) that Johanna had been sexually molested two years ago, and (2) the mother did not remember when Johanna told her about it. That is certainly one reasonable interpretation of the evidence, and based upon that interpretation there is no basis for the claim that the mother, Mrs. Schrader, perjured herself. Accordingly, the district court did not err in failing to grant Ramos' motion for new trial based upon his allegations of perjured testimony.

■ In addition, Ramos contended that such newly discovered evidence entitled him to a new trial in and of itself, as it tended to support his theory that the charges against him were fabricated to shield the real perpetrator. The district court rejected this contention on the basis that the evidence was not in fact "newly discovered." The district court noted that:

> Johanna testified at trial that she had, prior to October 12th, told her mother,

Carol, that she had been sexually molested. Defense counsel did not ask any specifics on what Johanna had told her mother or who had molested her. Ramos had the opportunity to develop facts as to the prior molestations and the reporting of the same but for strategy or other reasons chose not to develop such facts.... Carol Schrader testified after Johanna at trial. A review of Carol Schrader's trial testimony reveals that Ramos also declined to inquire of Carol as to what Johanna told Carol after Ramos established at trial through the testimony of Carol that Johanna had reported a prior molestation.

The defense trial strategy was not to use obtainable evidence during trial in the form of who had previously molested Johanna. Therefore, evidence of prior molestation is not newly discovered evidence.

We agree with the district court's finding that since defense counsel elected not to pursue and develop this line of inquiry, the evidence cannot be characterized as newly discovered evidence entitling Ramos to a new trial.

The judgment of the district court is affirmed.

JOHNSON, BOYLE and McDEVITT, JJ., concur.

---

1. The voir dire examination of Shadel clearly demonstrated good reason for excusing Shadel and calling another juror as a replacement:

> Mr. Vogel: Does it bother you or do you think the Defendant is somehow guilty as he stands here in court today charged with this crime?
> Mr. Shadel: I assume he had to do something to get him in here.
> ....
> Mr. Cottrell: What sort of thing is it you would expect the defendant to show you in a case like this? Are you saying you want to see something from the other side? What would you expect him to show you?
> Mr. Shadel: Proof he didn't commit the crime.
> Mr. Cottrell: Fair enough. What sort of thing might that be? Any idea?
> Mr. Shadel: No idea.
> Mr. Cottrell: But you would want to see something from his side showing he didn't commit a crime or this crime; is that correct?

BISTLINE, Justice, dissenting.

## I. FAILURE TO REMOVE BIASED VENIREPERSON FOR CAUSE

A criminal defendant is entitled to a fair trial by a panel of impartial, indifferent jurors. A juror who has formed an opinion before trial cannot be impartial. *Irvin v. Dowd,* 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961). Idaho Code § 19–2019(2) provides for the excusing of a juror for cause "[f]or the existence of a state of mind on the part of the juror in reference to the case, or to either of the parties, which, in the sound discretion on the part of the trier, leads to the inference that he will not act with entire impartiality, and which is known in this code as actual bias."

The prospective juror Shadel held the opinion that the defendant was guilty because he had been charged with a crime. He stated that the defendant would have to prove himself innocent, and also that he would not be able to set aside such feelings toward the defendant.[1]

Although the trial court is allowed considerable discretion in the manner of voir dire examination of prospective jurors, it is questionable whether it is good practice for a court to attempt to rehabilitate a juror

> Mr. Shadel: Yes.
> ....
> Mr. Cottrell: When you told both me and the Prosecuting Attorney earlier that you would look to the defendant to prove something and that you had a feeling he must have done something or he wouldn't be here, do you still have that feeling now? You were telling the truth; is that right?
> Mr. Shadel: Yes.
> Mr. Cottrell: And you have that feeling now?
> Mr. Shadel: Yes.
> Mr. Cottrell: So, the fact the Judge read that instruction a few minutes ago didn't change that, did it?
> Mr. Shadel: Probably not.
> Mr. Cottrell: Okay. Your Honor, I am not going to argue it, but I will still renew the motion.
> The Court: Mr. Shadel, let me ask you, will you follow that instruction that I read?
> Mr. Shadel: Yes.

who has stated that he does in fact have a bias. Tremendous pressure is exerted upon a prospective juror when a judge publicly inquires, "Will you follow the law?" When the venireperson responds that he or she will follow the law, it is often because of the psychological impact of publicly answering the judge's question. *Irvin v. Dowd*, 366 U.S. at 728, 81 S.Ct. at 1645. It is for this reason that a juror must be excused for cause whenever it appears that any reasonable doubt exists as to whether the juror can act with entire impartiality. *Nailor v. People*, 200 Colo. 30, 612 P.2d 79, 80 (1980); *Hill v. State*, 477 So.2d 553, 556 (Fla.1985).

The decision to strike a prospective juror for cause is within the discretion of the trial court. I.C. § 19–2019(2). In a case such as this, however, where the venireperson has clearly exhibited his bias, it is an abuse of discretion to deny a challenge for cause. *Nailor v. People*, 612 P.2d at 80; *Hill v. State*, 477 So.2d at 556.

## II. FAILURE TO EXCUSE A CHALLENGED JUROR FOR CAUSE AS GROUNDS FOR A NEW TRIAL

Ramos was required to use one of his peremptory challenges to exclude Shadel because the trial judge refused to excuse Shadel for cause. Ramos exhausted all of his peremptory challenges, and he asserts that had he not been required to use one of his peremptory challenges to remove Shadel, there were in fact other jurors whom he would have chosen to remove by peremptory challenge.

A defendant in a criminal action should not be put to the necessity of using a peremptory challenge when it clearly appears that the prospective juror is disqualified for cause. *State v. Dickens*, 68 Idaho 173, 177, 191 P.2d 364, 365–66 (1948). The error in refusing to excuse a biased juror cannot be deemed harmless because it impairs the defendant's right to his or her allotted number of peremptory challenges. *Hill v. State*, 477 So.2d at 556; *Nailor v. People*, 612 P.2d at 80.

In *Swain v. Alabama*, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965), the United States Supreme Court recognized the critical importance of the defendant's right to exercise peremptory challenges:

> The persistence of peremptories and their extensive use demonstrate the long and widely held belief that peremptory challenge is a necessary part of trial by jury. *See Lewis v. United States*, 146 U.S. 370, 376, 13 S.Ct. 136, 138, 36 L.Ed. 1011 [1892]. Although '[t]here is nothing in the Constitution of the United States which requires the Congress [or the States] to grant peremptory challenges,' *Stilson v. United States*, 250 U.S. 583, 586, 40 S.Ct. 28, 30, 63 L.Ed. 1154 [1919], nonetheless the challenge is 'one of the most important of the rights secured to the accused,' *Pointer v. United States*, 151 U.S. 396, 408, 14 S.Ct. 410, 414, 38 L.Ed. 208 [1894]. The denial or impairment of the right is reversible error without a showing of prejudice, *Lewis v. United States, supra*....

380 U.S. at 219, 85 S.Ct. at 835.

The Supreme Court recently revisited impairment of the right to peremptory challenges in *Ross v. Oklahoma*, 487 U.S. 81, 108 S.Ct. 2273, 101 L.Ed.2d 80 (1988). *Ross* held that the defendant was *not* deprived of his right to an impartial jury when he had to use a peremptory challenge to remove a juror who should have been removed for cause. That holding, however, was premised upon an Oklahoma principle which requires that a defendant disagreeing with a trial court's adverse ruling on a for cause challenge must exercise a peremptory challenge to remove the juror in order in order to preserve the claim that the ruling deprived him of a fair trial. Thus it is seen that the right to exercise

The Court: Irrespective of what you have in the back of your mind these feelings you talked about?

Mr. Shadel: Yes, I would follow that.
Tr. Vol. I, 12, 19, 23–24.

peremptory challenges is a qualified right in Oklahoma. The Supreme Court concluded:

As required by Oklahoma law, petitioner exercised one of his peremptory challenges to rectify the trial court's error, and consequently he retained only eight peremptory challenges to use in his unfettered discretion. But he received all that Oklahoma law allowed him, and therefore his due process challenge fails.

*Ross,* 487 U.S. at 90–91, 108 S.Ct. at 2279–80.

*Ross,* however, took care to confine its holding to the particular situation presented by Oklahoma law. In footnote four the Court wrote:

We need not decide the broader question whether, in the absence of Oklahoma's limitation on the 'right' to exercise peremptory challenges, 'a denial or impairment' of the exercise of peremptory challenges occurs if the defendant uses one or more challenges to remove jurors who should have been excused for cause. *See Swain v. Alabama,* 380 U.S. 202, 219, 85 S.Ct. 824, 835, 13 L.Ed.2d 759.

*Ross,* 487 U.S. at 91, 108 S.Ct. at 2280. *Swain* stated that the denial or impairment of the right to exercise peremptory challenges constitutes reversible error even without a showing of prejudice. *Swain,* 380 U.S. at 219, 85 S.Ct. at 835. *Ross* leaves this principle of *Swain* intact.

A recent Arizona case found *Ross* inapplicable in Arizona and restated the right of a defendant to exercise all peremptory challenges statutorily allocated: [2]

Our case differs from *Ross.* Unlike Oklahoma, Arizona law does not require a defendant to use peremptory challenges to cure a trial court's erroneous refusal to strike a juror for cause. The rule in Arizona is that the right to peremptory challenges is so substantial that forcing a party to use a peremptory challenge to strike potential jurors who should have been stricken for cause denies the litigant a substantial right. Thus, the trial court's error in refusing to strike Mrs. Ostrander for cause was not harmless error.

*State v. Sexton,* 163 Ariz. 301, 787 P.2d 1097, 1099 (1989).

The Supreme Court of Missouri similarly rejected the *Ross* ruling:

If [the *Ross* ] rule were extrapolated to Missouri then there would be no prejudice in failing to sustain challenges for cause in a capital case unless there were ten erroneous overrulings. The defendant could keep any lesser number of unqualified jurors from serving by exercising peremptory challenges. Our practitioners have always placed great value in the peremptory challenge and our decisions have recognized this value. We decline to depart from our long established standards, grounded on our statutes and confirmed in decisions, in favor of a holding that would severely dilute the value of peremptory challenges.

*State v. Wacaser,* 794 S.W.2d 190, 193 (Mo. 1990).

Idaho, like Arizona and Missouri, has no statutory law requiring a defendant to use a peremptory challenge to remove a juror who should have been removed for cause in order to preserve an objection to the failure to dismiss that juror for cause. *See* I.C. § 19–2001 *et seq.* The *Ross* holding, therefore, is not applicable in Idaho.

The two Idaho cases which have dealt with this issue reached divergent conclusions. The earlier case, *State v. Dickens,* 68 Idaho 173, 191 P.2d 364 (1948), ruled that "it plainly appears that the practical result of the disallowance by the court of defendant's challenge for cause ... was to contract the number of peremptory challenges to which he was entitled, and that such an error may have been seriously prejudicial to defendant." 68 Idaho at 177, 191 P.2d at 366 (quoting *People v. Weil,* 40 Cal. 268). The later case, *State v. Woz-*

**2.** Arizona Rule of Criminal Procedure 18.4.

*niak,* 94 Idaho 312, 486 P.2d 1025 (1971), held that, in order for the defendant to establish error in the trial court's failure to remove a biased juror for cause, the defendant must show bias on the part of at least one of the jurors who remained and participated in the jury deliberations. 94 Idaho at 319, 486 P.2d at 1032.

*State v. Dickens* properly protects a defendant's right to exercise his or her full slate of peremptory challenges, whereas *Wozniak* fails to do this. United States Supreme Court precedent establishes that even without a showing of prejudice the denial or impairment of the right to exercise peremptory challenges is reversible error. *Swain v. Alabama,* 380 U.S. at 219, 85 S.Ct. at 835; *Lewis v. United States,* 146 U.S. at 376, 13 S.Ct. at 138. Most jurisdictions recognize that this is an important and integral element of a criminal defendant's right to an impartial jury. *Nailor v. People,* 200 Colo. 30, 612 P.2d 79, 80 (1980); *State v. Sexton,* 163 Ariz. 301, 787 P.2d 1097, 1099 (1989); *State v. Ternes,* 259 N.W.2d 296 (N.D.1977), *cert. denied,* 435 U.S. 944, 98 S.Ct. 1524, 55 L.Ed.2d 540 (1978); *Hill v. State,* 477 So.2d 553, 556 (Fla.1985); *State v. Wacaser,* 794 S.W.2d 190, 193 (Mo.1990); *State v. Sugar,* 408 So.2d 1329 (La.1982); *Martin v. Commonwealth,* 221 Va. 436, 271 S.E.2d 123 (1980); *Commonwealth v. Jones,* 477 Pa. 164, 383 A.2d 874 (1978); *Jones v. Cloud,* 119 Ga. App. 697, 168 S.E.2d 598 (1969).

The majority's holding that the denial or impairment of the right to exercise peremptory challenges is not reversible error without a showing that one of the jurors who sat on the panel was biased contradicts United States Supreme Court precedent and authority from other jurisdictions, and denies a criminal defendant his or her right to a fair trial.

### III. DEFENDANT'S ACCESS TO INFORMATION SUBPOENAED

On receiving the records of Johanna Schrader's psychiatric treatment the district court heard respective counsel on the issue of access to the records. It decided that the records were not privileged or hearsay, but denied defendant access to them in order to safeguard the privacy of Johanna. After the court made a limited disclosure of the records, defendant again requested access to the records, pointing out that the information in the records would be relevant for at least two reasons. First, the statement in the records that molestation by the grandfather had continued through the summer of 1987, "until she told her mother," would show that Carol Schrader was less than truthful when she testified that the only time she had heard from Johanna of any alleged molestation had been two years earlier. Second, information from witnesses named in the report would directly support defendant's theory of a motive for making false charges against him. The court again denied defendant access to the records.

The information in the records is not privileged. Except as otherwise provided by constitution, or by statute implementing a constitutional right, or by the Rules of Evidence or other rules promulgated by the Supreme Court of Idaho, no person is privileged to refuse to disclose any matter, to refuse to produce any object or writing, or to prevent a person from disclosing any matter or producing any object or writing. So sayeth the Court's Rule of Evidence 501. Thereunder the trial judge was without authority to refuse defendant access to the medical records; nor was any authority cited in support of his decision.

### IV. NEW TRIAL BASED ON NEWLY DISCOVERED EVIDENCE

At trial defendant attempted to show that in order to protect a family member or close friend who had sexually molested the two girls, falsified charges were brought against him. Defense counsel believed that to establish such a motive defendant needed to show that such molestation had occurred, and that it had occurred sufficiently recent so as to be relevant. At trial

the defendant questioned Carol Schrader concerning any other sexual molestation of her daughters. In response, Mrs. Schrader testified that Johanna had reported only one instance of molestation which occurred two years earlier, and that the report turned out to be unfounded. The defendant later found out after trial on the trial judge's making available a limited disclosure of Johanna Schrader's medical records that, in the course of post-trial psychiatric treatment, Johanna stated that she had been molested by family members (including her grandfather), and that the molestation by the grandfather had continued until she reported it to her mother in the summer of 1987 (one to two months before the accusation was made naming the defendant). On the basis of such newly discovered evidence material to his defense and newly discovered evidence of perjury the defendant moved for a new trial.

The district court erred in denying the motion for the new trial. The court focused only on the matter of *who* allegedly had molested Johanna, rather than on *when* this information was reported to Mrs. Schrader. The court concluded: "The defense trial strategy was not to use obtainable evidence during trial in the form of who had previously molested Johanna. Therefore, evidence of prior molestations is not newly discovered evidence." The distinction between who and when is particularly significant. The statements attributed to Johanna found in the medical record, if true, would not necessarily contradict the testimony of Mrs. Schrader as to *who* was guilty of the alleged molestation, because she had testified that it had been "this person." [3] But if Johanna's statement is true that molestation by her grandfather continued through the summer of 1987 and until she told her mother, then Mrs. Schrader's testimony that the time when such molestation had been reported was two years earlier is necessarily perjured.

Had Mrs. Schrader truthfully disclosed that sexual molestation by someone else had been reported to her shortly before the accusation was made against Ramos, defense counsel asserts that he would have asked for further particulars to uncover facts bearing out the suspected motive for falsely accusing the defendant. But when Mrs. Schrader testified that the reported molestation occurred two years before, its relevance on the issue of motive virtually disappeared. Therefore, it could not be and was not pursued.

The majority's attempt to sidestep this issue is disingenuous. Its dissection of Mrs. Schrader's testimony and speculation as to possible interpretations of the testimony thus dissected cannot dispose of the fact that Mrs. Schrader mislead defense counsel on a critical issue and precluded the defense from uncovering a motive for falsely accusing the defendant. Had the jury been told the truth, that Johanna had been molested by her grandfather within a month or two of the time Ramos was charged with molestation, then it is quite possible that it would not have found be-

---

**3.** Mrs. Schrader's testimony on this point is as follows:

Q. On an earlier occasion she came to you and told you she had been sexually molested?
A. Yes.
Q. Is that correct?
A. Yes.
Q. How long ago was that?
A. Two years ago.
Q. That's two years ago from now. What I am trying to ask you, Mrs. Schrader, was it about a year and a half prior to the alleged events involving Eric Ramos?
A. I don't remember when she told me.
Q. When she came to you earlier with this type of information?

A. Uh-huh.
Q. What did you do?
A. She told me what had happened to her, which I didn't feel that it was a total molestation. And if you knew what I mean by that, I think you would say, okay, you are right, but you don't; okay?
Q. You told me what your reason was. Did you do anything?
A. No. It's all that had happened is that this person had rubbed her leg like this (indicating). Now, is this molestation to you? To Johanna, yeah, it was.
Tr., Vol. II, 393–94.

yond a reasonable doubt that the girls had been molested by the defendant.

In *State v. Scroggins,* 110 Idaho 380, 384–85, 716 P.2d 1152, 1156–57, *cert. denied,* 479 U.S. 989, 107 S.Ct. 582, 93 L.Ed.2d 585 (1986), this Court adopted the test enunciated in *Larrison v. United States,* 24 F.2d 82. (7th Cir.1928), which states that a new trial should be granted because of perjured testimony when:

(1) The court is reasonably well satisfied that the testimony given by a material witness is false;

(2) That without it the jury might have reached a different conclusion;

(3) That the party seeking the new trial was taken by surprise when the false testimony was given and was unable to meet it or did not know of its falsity until after the trial.

*Scroggins,* 110 Idaho at 384–85, 716 P.2d at 1156–57.

The circumstances of the present case satisfy each of the *Larrison* criteria. Johanna's statements to hospital staff concerning her telling her mother about the sexual molestation by her grandfather one to two months prior to the accusation of Ramos are sufficient to "reasonably well satisfy" the court that the testimony by Mrs. Schrader that Johanna's report of the molestation by the grandfather was made two years earlier is false. Given the importance to Ramos's defense of the issue of motive for fabrication, one cannot say that the jury might not have reached a different verdict if it had been given the truth. If the jurors had known that the victim was sexually molested by her grandfather one to two months before Mrs. Schrader was compelled by the Department of Health and Welfare to name someone as the molester it is quite possible that the jury would have entertained a reasonable doubt concerning Ramos's guilt. Finally, there is no dispute that the defense had no way of knowing, or proving, that Schrader's testimony was false until after the conclusion of the trial. Under the *Larrison* test,

therefore, the newly discovered evidence of perjury requires that the defendant be granted a new trial.

Ramos also contends that the newly discovered evidence of molestation by family members entitles him to a new trial in and of itself. The district court rejected this contention on the basis that this evidence was not in fact "newly discovered" since Ramos had the opportunity to develop facts as to prior molestations but chose not to. The majority agrees with this facile response to the issue. As has been discussed above, defense counsel attempted to establish that a family member molested Johanna at a point close in time to when the charges against Ramos were made. But when Mrs. Schrader testified that the reported molestation occurred two years before, its relevance on the issue of motive for making false accusations virtually disappeared. Therefore, the issue could not be and was not pursued.