**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 39876**

| | | |
|---|---|---|
| **STATE OF IDAHO,** | ) | **2014 Opinion No. 58** |
| | ) | |
| **Plaintiff-Respondent,** | ) | **Filed: July 24, 2014** |
| | ) | |
| **v.** | ) | **Stephen W. Kenyon, Clerk** |
| | ) | |
| **REY ALFREDO ORNELAS, aka REY A.** | ) | |
| **ORNELAS, TACAUCHO ORNELAS,** | ) | |
| | ) | |
| **Defendant-Appellant.** | ) | |
| | ) | |

Appeal from the District Court of the Third Judicial District, State of Idaho, Canyon County. Hon. Thomas J. Ryan, District Judge.

Judgment of conviction for four counts of lewd conduct with a minor child under sixteen and three counts of sexual abuse of a child under the age of sixteen years, <u>remanded</u>.

Sara B. Thomas, State Appellate Public Defender; Diane M. Walker, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Jessica M. Lorello, Deputy Attorney General, Boise, for respondent.

_____

GUTIERREZ, Chief Judge

Rey Alfredo Ornelas appeals from his judgment of conviction after a jury found Ornelas guilty of four counts of lewd conduct with a minor child under sixteen and three counts of sexual abuse of a child under the age of sixteen years. Ornelas contends that the district court abused its discretion when it refused to excuse biased jurors for cause. Ornelas also argues that his and a prospective juror's rights to equal protection were violated when the State used its peremptory challenges to only strike men from the prospective jury. For the reasons that follow, we remand the case.

1

# I.

## FACTS AND PROCEDURE

After a mistrial, an amended, superseding indictment charged Ornelas with five counts of lewd conduct with a minor child under sixteen, three counts of sexual abuse of a child under the age of sixteen years, and two counts of sexual battery of a minor child sixteen or seventeen years of age. The case proceeded to a second trial, and the jury selection process began. After the court conducted its voir dire, the prosecutor propounded questions to the prospective jurors, but did not challenge any juror for cause. Ornelas then propounded questions to the prospective jurors. Ornelas challenged several jurors for cause, including jurors 13, 32, and 34. The district court denied Ornelas' challenges as to jurors 13, 32, and 34.

The parties then exercised their peremptory challenges; Ornelas struck eleven females and one male, including jurors 32 and 34, and the prosecutor struck six males, including juror 24, and waived six peremptory challenges. This left a jury pool of four females, including juror 13, and ten males. The prosecutor made a challenge based on *Batson v. Kentucky*, 476 U.S. 79 (1986) and Ornelas gave his reasons for the peremptory strikes. Ornelas then made a *Batson* challenge, noting that all of the prosecutor's peremptory strikes were against males. The district court asked the parties if they "want[ed] to just throw in the cards and start all over?" After saying no, the prosecutor volunteered her reasons for striking the jurors, including juror 24. Following the prosecutor's reasons, the district court asked for further argument, and Ornelas responded that the prosecutor inappropriately selected jurors based upon gender:

> Judge, like I said, my *Batson* challenge was based on the state exercising all of their preempts [sic] that they exercised against the males and making the comment that they exercised the last preempt [sic] against a male to try to obtain another female on the jury.
> So that's my argument, that the state engaged in an inappropriate selection of the jurors based upon gender.

The district court then denied each party's *Batson* challenge:

> Based upon the record before the court the court cannot make a finding that either party purposefully has discriminated based on gender, and, therefore, we're going to proceed.
> The court is denying the *Batson* challenge of both parties. We will proceed. I am satisfied that there is a substantial female influence on this jury, even with just four out of the fourteen, and so we're going to proceed with this jury.

2

The jury found Ornelas guilty of four counts of lewd conduct with a minor child under sixteen and three counts of sexual abuse of a child under the age of sixteen years. Ornelas appeals.

## II.

## ANALYSIS

On appeal, Ornelas contends that the district court abused its discretion when it refused to excuse biased jurors for cause. Additionally, Ornelas contends that his and juror 24's rights to equal protection were violated when the State used its peremptory challenges to only strike men from the jury.

### A. Challenges for Cause

Ornelas contends that the district court abused its discretion and denied his constitutional rights to an impartial jury by refusing to excuse three jurors whom Ornelas asserts were biased. In addition, Ornelas argues that he was deprived of due process of law because he received fewer peremptory challenges than the State after he had to utilize his peremptory challenges to cure the district court's errors.

A criminal defendant has a constitutional right to trial by an impartial jury. U.S. CONST. amends. V, VI, XIV; IDAHO CONST. art. I, §§ 7, 13. This right is recognized in Idaho Code § 19-1902, and the criminal defendant has the ability to strike potential jurors for cause if actual or implied bias exists. I.C. § 19-2019; *see also* I.C.R. 24(b) (addressing the procedure for voir dire examination and challenging potential jurors for cause). Actual bias is "the existence of a state of mind on the part of the juror in reference to the case, or to either of the parties, which, in the exercise of a sound discretion on the part of the trier, leads to the inference that he will not act with entire impartiality." I.C. § 19-2019(2). When a party uses one of its peremptory challenges to remove a juror it argues should have been removed for cause, the party must show on appeal that "he was prejudiced by being required to use a peremptory challenge to remove [the juror]." *State v. Ramos*, 119 Idaho 568, 570, 808 P.2d 1313, 1315 (1991). However, a trial court does not abuse its discretion by refusing to excuse a juror for cause where the juror's answers during voir dire initially gave rise to a challenge for cause, but the juror's later responses assured the court that the juror would be able to remain fair and impartial. *Nightengale v. Timmel*, 151 Idaho 347, 353, 256 P.3d 755, 761 (2011) (citing *Morris v. Thomson*, 130 Idaho 138, 141, 937 P.2d 1212, 1215 (1997)).

3

The trial court has the discretion to determine whether a juror can render a fair and impartial verdict. *State v. Hauser*, 143 Idaho 603, 609, 150 P.3d 296, 302 (Ct. App. 2006). When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine: (1) whether the lower court correctly perceived the issue as one of discretion; (2) whether the lower court acted within the boundaries of such discretion and consistently with any legal standards applicable to the specific choices before it; and (3) whether the lower court reached its decision by an exercise of reason. *State v. Hedger*, 115 Idaho 598, 600, 768 P.2d 1331, 1333 (1989).

Ornelas specifically references jurors 13, 32, and 34. Jurors 32 and 34 were struck by Ornelas via peremptory challenges. Juror 13 was empaneled. Accordingly, we first turn to juror 13. During voir dire, Ornelas asked the potential jurors whether they would "err on the side of the child as opposed to the adult." Juror 13 first stated that she would "struggle with not erring on the side of the child" because she was a parent with daughters and worked with children. Juror 13 acknowledged it would be difficult for her to set aside the predisposition, but she was willing to try. When asked by defense counsel whether juror 13 would want herself to sit on the jury if she were the defendant, she stated, "Probably not." Defense counsel challenged juror 13 for cause, and the prosecutor inquired. When the prosecutor asked, "Can you follow the court's instruction, and can you find him not guilty if there is a reasonable doubt?" juror 13 responded, "I think so. It just would depend on--how to define reasonable doubt and how much doubt--you know, it's hard to know." After the court denied defense counsel's challenge to juror 13, defense counsel asked juror 13 whether she would notify the court if she could not be fair in the case or follow the reasonable doubt jury instruction. Juror 13 responded that she would.

Assuming without deciding that juror 13's initial responses, stating it would be difficult for her to not err on the side of the child, gave grounds for a challenge for cause, we are persuaded that the district court did not abuse its discretion by denying defense counsel's challenge to juror 13. The district court properly relied upon juror 13's assurances that she could follow the court's instruction, and accordingly, the district court did not abuse its discretion by denying defense counsel's challenge for cause. *Nightengale*, 151 Idaho at 353, 256 P.3d at 761 ("Therefore, because Juror # 1 indicated she could make a decision based on the evidence, the court was entitled to rely on that assurance, and it did not abuse its discretion in denying the

4

motion to strike her for cause."); *Morris*, 130 Idaho at 141, 937 P.2d at 1215 ("[A] trial court does not abuse its discretion by refusing to excuse for cause jurors whose answers during voir dire initially give rise to challenges for cause but who later assure the court that they will be able to remain fair and impartial.").

We now turn to jurors 32 and 34. Even assuming jurors 32 and 34 were biased, Ornelas is required to show that he was prejudiced by having to use peremptory challenges. *Ramos*, 119 Idaho at 570, 808 P.2d at 1315. "When a party uses one of its peremptory challenges to remove a juror it argues should have been removed for cause, the party must show on appeal that 'he was prejudiced by being required to use a peremptory challenge to remove [the juror].'" *Nightengale*, 151 Idaho at 354, 256 P.3d at 762 (quoting *Ramos*, 119 Idaho at 570, 808 P.2d at 1315). That is, Ornelas is required to prove that "an incompetent juror [was] forced upon him." *Id.* (quoting 47 Am. Jur. 2d. *Jury* § 205 (2006)); *accord Ross v. Oklahoma*, 487 U.S. 81, 86 (1988). Ornelas, in his brief before this Court, only argues that he was prejudiced because juror 13 was seated in the jury. But as we determined above, the district court did not abuse its discretion by denying defense counsel's for-cause challenge to juror 13. That is, juror 13 was not a juror who was removable for cause and, thus, was not an incompetent juror. *E.g., Whiting v. State*, 969 N.E.2d 24, 30 n.7 (Ind. 2012) ("An 'incompetent' juror is one who is removable for cause . . . ."); *Townes v. State*, 93 So. 3d 895, 897 (Miss. Ct. App. 2012) (finding no impaneled jurors were incompetent to sit on the jury because the record reflected that the jurors assured that they could be fair and impartial). Accordingly, Ornelas has not shown that an incompetent juror was forced upon him.

Ornelas alternatively contends that he was deprived of due process of law because he was required to utilize his peremptory challenges to strike jurors 32 and 34. Ornelas does not explicitly argue how he was denied due process of law; rather, Ornelas' argument is that he "should not be punished for using his peremptory challenges to try to remedy the district court's erroneous denial of his two for-cause challenges." Ornelas then continues by citing a string of cases from other jurisdictions addressing various issues relating to for-cause and peremptory challenges. In effect, Ornelas is arguing that we should overturn Idaho's precedent that requires the defendant to show that an incompetent juror was forced upon him. The Idaho Supreme Court has expressly rejected this argument in *Nightengale*, 151 Idaho at 354, 256 P.3d at 762; accordingly, we also reject the argument.

5

**B.** *Batson* **Challenge**

In *Batson*, 476 U.S. at 85, the United States Supreme Court held that discriminatory use of peremptory challenges to exclude persons from jury service on account of their race violates the Equal Protection Clause of the United States Constitution. In *J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127, 141-42 (1994), the Court extended the *Batson* doctrine to peremptory challenges exercised on the basis of gender. According to the Court, the defendant and the jurors have a right to a nondiscriminatory jury selection process. *Id.* at 141. When raised, a *Batson* challenge based on gender proceeds in three steps:

> First, a defendant must make a prima facie showing that a peremptory challenge has been exercised on the basis of [gender]. Second, if that showing has been made, the prosecution must offer a [gender]-neutral basis for striking the juror in question. Third, in light of the parties' submissions, the trial court must determine whether the defendant has shown purposeful discrimination.

*United States v. Alanis*, 335 F.3d 965, 967 (9th Cir. 2003) (alterations in original) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 328-29 (2003)); *accord State v. Araiza*, 124 Idaho 82, 87, 856 P.2d 872, 877 (1993) (applying the framework to a racial challenge).

Ornelas contends that (1) he made a prima facie showing that a peremptory challenge was exercised on the basis of gender, (2) the prosecutor failed to provide a gender-neutral reason for striking juror 24, and (3) the district court's finding that Ornelas has not shown purposeful discrimination is clearly erroneous. The State maintains that the district court's finding is not clearly erroneous because the prosecutor offered multiple reasons for removing juror 24.

Initially, we note that the State does not challenge Ornelas' contention that he made a prima facie showing, as required by the first step of the *Batson* challenge. Moreover, the first step is likely moot at this point. *See Hernandez v. New York*, 500 U.S. 352, 359 (1991) (plurality opinion). Accordingly, we examine the second step of the *Batson* challenge to determine if a gender-neutral reason was provided by the prosecutor.

**1.      Standard of review**

Neither our Court nor the Idaho Supreme Court has explicitly specified what standard of review applies to the second step of a *Batson* challenge. In cases where the alleged error was analyzed at the third *Batson* step, our Court and the Idaho Supreme Court have stated that an appellate court will only overturn the trial court's finding at the third step of *Batson* if it is clearly

6

erroneous in light of the facts as a whole. *Araiza*, 124 Idaho at 87, 856 P.2d at 877; *State v. Foster*, 152 Idaho 88, 92, 266 P.3d 1193, 1197 (Ct. App. 2011).

In deciding what standard of review applies to the second step, we are guided by the United States Supreme Court's discussion in *Hernandez* where the plurality stated, "In evaluating the race neutrality of an attorney's explanation, a court must determine whether, assuming the proffered reasons for the peremptory challenges are true, the challenges violate the Equal Protection Clause as *a matter of law*." *Hernandez*, 500 U.S. at 359 (emphasis added). As the Michigan Supreme Court recognized, "[A]t Batson's second step, a court is only concerned with whether the proffered reason violates the Equal Protection Clause as a matter of law." *People v. Knight*, 701 N.W.2d 715, 727 (Mich. 2005). Over questions of law, we exercise free review. *State v. O'Neill*, 118 Idaho 244, 245, 796 P.2d 121, 122 (1990). Therefore, we join with the courts that have determined that the second step of *Batson* is subject to de novo review. *E.g.*, *Boyde v. Brown*, 404 F.3d 1159, 1170 (9th Cir. 2005); *Valdez v. People*, 966 P.2d 587, 590 (Colo. 1998); *Knight*, 701 N.W.2d at 726; *State v. Thorpe*, 783 N.W.2d 749, 757 (Neb. 2010); *Riley v. Commonwealth*, 464 S.E.2d 508, 510 (Va. Ct. App. 1995).

### 2. The second step of *Batson*

The second step of the *Batson* challenge places the burden on the nonmoving party to offer a race- or gender-neutral explanation. *Alanis*, 335 F.3d at 967 (quoting *Miller-El*, 537 U.S. at 328-29); *accord Araiza*, 124 Idaho at 87, 856 P.2d at 877. The facial validity of the proffered reason is at issue in the second step:

> The second step of this process does not demand an explanation that is persuasive, or even plausible. "At this [second] step of the inquiry, the issue is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race [or gender] neutral."

*Purkett v. Elem*, 514 U.S. 765, 767-68 (1995) (per curiam) (first alteration in original) (quoting *Hernandez*, 500 U.S. at 360 (O'Connor, J., concurring)).

During jury selection in Ornelas' second trial, the prosecutor first raised a *Batson* challenge against defense counsel, contending that there was a prima facie showing of discrimination because defense counsel used twelve peremptory strikes against eleven women and one man. After defense counsel offered reasons for striking the jurors, the judge asked the

7

prosecutor for further argument. The prosecutor provided further argument by discussing one of her own strikes:

> I can indicate to the court that my tenth preempt was done in an effort to try to get a female on the panel . . . . And I just think the whole purpose of *Batson* is to get a fair and impartial jury that is reflective of the community, and that there are no challenges, no gender specific reasons or Fourteenth Amendment specific reasons for the strikes.

After the court denied the prosecutor's *Batson* challenge, defense counsel raised a *Batson* challenge against the prosecutor. In response, the prosecutor explained why she struck the jurors that she did, including why she struck juror 24:

> The state challenged Juror No. 24, part of the reason was because *we were trying to get another female on*, but part of the reason was also because he is young. The state had concerns with regards to his life experiences. The state also had concerns because he has a small child, but not necessarily a child of the age of the victims, so the state had concerns with regards to him relating.

(Emphasis added.) Stated differently, the prosecutor said she excused juror 24 for four reasons: juror 24 was a man and the prosecutor wanted another female on the jury; juror 24 was young; the prosecutor was concerned with juror 24's life experiences; and juror 24 had a small child. The last three reasons are permissible reasons because they do not facially invoke race or gender. *Purkett*, 514 U.S. at 767-68. The first reason is impermissible because gender-based "discriminatory intent is inherent in the prosecutor's explanation." *Id.* at 768 (quoting *Hernandez*, 500 U.S. at 360). *See also J.E.B.*, 511 U.S. at 146 ("[T]he Equal Protection Clause prohibits discrimination in jury selection on the basis of gender, or on the assumption that an individual will be biased in a particular case for no reason other than the fact that the person happens to be a woman or happens to be a man."); *Riley*, 464 S.E.2d at 510 ("Here, however, the prosecutor's explanation clearly references his intention to strike only women--albeit older women--from the jury panel. The fact that the Commonwealth used age to identify which women to strike does not overcome the constitutional infirmity.").

Indeed, the prosecutor's first proffered reason for striking juror 24 is similar to the reason given in *Guzman v. State*, 85 S.W.3d 242 (Tex. Crim. App. 2002), where the court found the prosecutor's reason was gender-based and impermissible. In that case, the prosecutor responded to a *Batson* challenge raised by the defendant by stating, "It's the State's contention that this being a case that involves family violence, violence against a child, *we prefer to have probably not only women* but also individuals who have children who are going to be able to comprehend

8

the issues that are going to be at hand." *Guzman*, 85 S.W.3d at 245 (emphasis added). The Texas court noted that the prosecutor's reason for striking one of the jurors was not gender-neutral. *Id.* Similarly, in Ornelas' case, the prosecutor's first reason for striking juror 24, "because we were trying to get another female on," is not gender-neutral. Therefore, in explaining the peremptory challenge used to strike juror 24, the prosecutor offered an impermissible reason along with permissible reasons.

### 3. Permissible and impermissible reasons

We are now faced with an issue of first impression in Idaho: whether a court proceeds to the third step of *Batson* or ends its analysis after an impermissible reason along with permissible reasons are proffered in the second step of *Batson*. Ornelas generally contends that "Juror Number 24 was removed because of his gender and, therefore, the district court made a clearly erroneous finding that the prosecutor did not engage in purposeful gender discrimination." With this contention, Ornelas seeks for us to vacate the judgment of conviction and remand his case for a new trial. However, Ornelas cites no authority for the relief he seeks. The State, meanwhile, quotes excerpts of a Seventh Circuit case that does not directly address the issue at hand. Other courts around the country have addressed this issue, and there is a split of authority among the federal circuit courts of appeal as well as the states. The United States Supreme Court has not yet specifically addressed this issue on review. As we describe below, most states have adopted what is the referred to as the per se approach, some states and most federal circuits have adopted a mixed-motives analysis, and the Ninth Circuit has adopted its own approach.

### a. Per se approach

Under the per se or tainted approach, the analysis of *Batson* challenges involving impermissible and permissible reasons ends after the second step. *Payton v. Kearse*, 495 S.E.2d 205, 208 (S.C. 1998). "Regardless of how many other nondiscriminatory factors are considered, any consideration of a discriminatory factor directly conflicts with the purpose of *Batson* and taints the entire jury selection process." *State v. Lucas*, 18 P.3d 160, 163 (Ariz. Ct. App. 2001) (citing *Payton*, 495 S.E.2d at 210); *accord Robinson v. United States*, 890 A.2d 674, 681 (D.C. 2006) ("[W]here the exclusion of a potential juror is motivated in substantial part by constitutionally permissible factors (such as the juror's age), the exclusion is a denial of equal protection and a *Batson* violation if it is *partially motivated as well* by the juror's race or gender." (emphasis added)). The Indiana Supreme Court, after collecting cases adopting the

9

mixed-motives analysis and cases adopting the per se approach, succinctly stated its reasons for adopting the per se approach:

> We endorse the approach taken by the foregoing jurisdictions and conclude that it is not appropriate to apply the dual motivation analysis in the *Batson* context. Such an analysis in our view is inconsistent with the "facially valid" standard announced by the Supreme Court in *Purkett*. Further, we recognize that *Batson* protects against only the most conspicuous and egregious biases. "To excuse such obvious prejudice because the challenged party can also articulate nondiscriminatory reasons for the peremptory strike would erode what little protection Batson provides against discrimination in jury selection."

*McCormick v. State*, 803 N.E.2d 1108, 1113 (Ind. 2004) (quoting *Payton*, 495 S.E.2d at 210).

### b.     Mixed-motives analysis

The mixed-motives analysis, dual-motivation analysis, or the but-for test that is applied to *Batson* challenges involving impermissible and permissible reasons has developed as a result of the United States Supreme Court's non-*Batson* equal protection decisions in *Mount Healthy School District Board of Education v. Doyle*, 429 U.S. 274 (1977) and *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252 (1977). The mixed-motives analysis is a "supplementary analysis." *Kesser v. Cambra*, 465 F.3d 351, 372 (9th Cir. 2006) (en banc) (Wardlaw, J., concurring). Under this test, "Once the claimant has proven improper motivation, dual motivation analysis is available to the person accused of discrimination to avoid liability by showing that the same action would have been taken in the absence of the improper motivation that the claimant has proven." *Howard v. Senkowsi*, 986 F.2d 24, 27 (2d Cir. 1993). Stated differently:

> [A]fter the defendant makes a *prima facie* showing of discrimination, the state may raise the affirmative defense that the strike would have been exercised on the basis of the gender-neutral reasons and in the absence of the discriminatory motive. If the state makes such a showing, the peremptory challenge survives constitutional scrutiny.

*Gattis v. Snyder*, 278 F.3d 222, 233 (3d Cir. 2002).

Because it is a supplementary analysis, Judge Wardlaw has explained that mixed-motives analysis may apply at either the second or third step of *Batson*:

> In *Batson* cases, courts may apply mixed-motive analysis at step two, and hold that a prosecutor who cannot show that he would have struck the veniremember in question absent the admitted racially discriminatory motivation has failed "to explain adequately the racial exclusion" by demonstrating that "permissible racially neutral selection criteria and procedures" justified the strike.

10

> Alternatively, courts may apply mixed-motive analysis at step three, where a defendant will succeed in establishing purposeful discrimination if the prosecutor cannot demonstrate that he would have exercised the strike absent his discriminatory motive. Either way, a court may not allow a mixed-motive rationale to survive equal protection scrutiny unless the prosecutor can establish by a preponderance of the evidence that he would have reached the same decision even in the absence of impermissible race-based motivation.

*Kesser*, 465 F.3d at 373 (Wardlaw, J., concurring) (citations omitted).

### c. The Ninth Circuit approach

The Ninth Circuit entered into the permissible versus impermissible reason parlay with its en banc decision in *Kesser*, 465 F.3d 351. The *Kesser* decision resulted in a six-five split in the en banc court, and the majority opinion did not specifically address the issue of permissible and impermissible reasons. However, a concurrence authored by Judge Wardlaw, and joined by two judges, specifically addressed the mixed-motives analysis and contended that habeas relief should have been granted because of the state appellate court's failure to apply mixed-motives analysis. *Kesser*, 465 F.3d at 372 (Wardlaw, J. concurring). At the time *Kesser* was authored, Judge Wardlaw noted that every federal circuit to have decided *Batson* cases where permissible and impermissible reasons were offered applied the mixed-motives analysis. *Kesser*, 465 F.3d at 373. Judge Berzon, who joined in Judge Wardlaw's concurring opinion, wrote her own concurrence. She stated that in a case arising on direct appeal she might hold that "the Equal Protection Clause forbids a prosecutor from exercising a peremptory challenge to dismiss a juror whenever a motivating factor for the dismissal is race-based, without permitting the prosecutor to establish that he would have challenged the juror absent the race-based motive." *Id.* at 376-77 (Berzon, J., concurring).

Then in 2010, a three-judge panel of the Ninth Circuit in *Cook v. LaMarque*, 593 F.3d 810 (9th Cir. 2010), considered a habeas corpus appeal that alleged a *Batson* violation, and the panel addressed whether to adopt the mixed-motives analysis utilized by the other circuits. Although none of the panel judges served on the prior eleven-judge en banc *Kesser* decision, the majority agreed to *not* adopt the mixed-motives approach. *Cook*, 593 F.3d at 815. Rather, the majority agreed to adopt the "motivated in substantial part by discriminatory intent" analysis. *Id.* at 815. The majority first acknowledged *Kesser*, but then examined a more recent United States Supreme Court case, *Snyder v. Louisiana*, 552 U.S. 472 (2008), noting that "the Supreme Court

11

revisited its *Batson* jurisprudence." *Cook*, 593 F.3d at 814. The majority in *Cook* quoted *Snyder*:

> In other circumstances, we have held that, once it is shown that a discriminatory intent was a substantial or motivating factor in an action taken by a state actor, the burden shifts to the party defending the action to show that this factor was not determinative. *See Hunter v. Underwood*, 471 U.S. 222, 228 (1985). We have not previously applied this rule in a Batson case, and we need not decide here whether that standard governs in this context. For present purposes, *it is enough to recognize that a peremptory strike shown to have been motivated in substantial part by discriminatory intent* could not be sustained based on any lesser showing by the prosecution.

*Cook*, 593 F.3d at 814-15 (emphasis added by the Ninth Circuit) (quoting *Snyder*, 552 U.S. at 485). Even though the majority recognized that adopting the mixed-motives analysis would "set [the Ninth Circuit] in the company of five sister circuits, [the Ninth Circuit] and the Supreme Court have declined to do so." *Id.* at 815. Accordingly, the majority limited its inquiry "to whether the prosecutor was 'motivated in substantial part by discriminatory intent.'" *Id.* (quoting *Snyder*, 552 U.S. at 485)). Thus, "[t]o determine whether race [or gender] was a substantial motivating factor," a court advances to *Batson*'s third step where the court "must evaluate 'the persuasiveness of the justification[s]' offered by the prosecutor." *Cook*, 593 F.3d at 815 (quoting *Purkett*, 514 U.S. at 768)).[1] Therefore, if the peremptory strike was motivated in substantial part by race or gender, the challenger has satisfied his burden of showing purposeful discrimination. *Id.*; *Crittenden v. Ayers*, 624 F.3d 943, 958 (9th Cir. 2010).

Judge Hawkins' concurrence and dissent in *Cook* addressed additional points supporting the conclusion to not adopt the mixed-motives analysis. He noted that the United States Supreme Court "has specifically declined to adopt the 'but for' causation requirement" used in the mixed-motives analysis in *Batson* jurisprudence. *Cook*, 593 F.3d at 828 (Hawkins, J., concurring in part and dissenting in part). Additionally, Judge Hawkins opined that the "but for"

---

[1]     The Sixth Circuit has characterized the Ninth Circuit's approach as a "modified version of the per se approach that considers 'whether the prosecutor was motivated in substantial part by discriminatory intent.'" *Akins v. Easterling*, 648 F.3d 380, 391 (6th Cir. 2011) (quoting *Cook v. LaMarque*, 593 F.3d 810, 815 (9th Cir. 2010)). This comparison is unfitting because the per se or tainted approach does not advance to the third step of *Batson*. The Ninth Circuit approach refines the analysis at the third step for the district court (and the appellate court) to determine whether the peremptory strike was motivated in substantial part by race or gender. *Crittenden v. Ayers*, 624 F.3d 943, 958 (9th Cir. 2010) (citing *Cook*, 593 F.3d at 815).

12

causation usually applied in Title VII jurisprudence, from whence *Batson*'s three-step framework originated, "is not appropriate in the distinct *Batson* context." *Cook*, 593 F.3d at 828. Specifically, Judge Hawkins pointed to the often sparse record and suggested that it would be "nearly impossible" to ferret out discrimination. *Id.*

### d. Idaho

In deciding which of the analysis methods should apply in Idaho, we are guided heavily by the United States Supreme Court's discussion in *Snyder*. The Supreme Court's discussion, although not formally rejecting the mixed-motives analysis, does at least imply that the Court will not require it. Rather, the Supreme Court's discussion sets a guideline that a peremptory strike violates the Equal Protection Clause when the strike is "motivated in substantial part by discriminatory intent." *Snyder*, 552 U.S. at 485.

The discussion in *Snyder* leads to the conclusion that the per se approach is the incorrect analysis to apply. The per se approach holds that a *Batson* violation has occurred anytime gender or race is an express factor in the use of the peremptory strike. If the Supreme Court were implicitly adopting the per se test, it would have stated that a peremptory strike violates the Equal Protection Clause when the strike is motivated by discriminatory intent, even if only motivated in part by discriminatory intent. *Snyder* does not take such a strict view of the requirements for showing a *Batson* violation. Indeed, if the goal of *Batson* and its progeny is to end racial or gender discrimination in jury selection, the per se test would catch those cases where race or gender is a substantial factor in the attorney's reason for exercising a peremptory strike. However, the per se test would also find an equal protection violation when the attorney announces ten permissible reasons for excluding the juror and also happens to mention that the juror was a man. Hence, the per se test is too rigid a test to apply to meet the purpose of *Batson*.

As for the mixed-motives analysis, there are practical problems that limit its usefulness to the trial court and to the appellate court. The Ninth Circuit interpreted a portion of the discussion in *Snyder* to "allude[] to the difficulty of determining on collateral review which of the prosecutor's motives were 'but for' causes." *Cook*, 593 F.3d at 815 (citing *Snyder*, 552 U.S. at 486). The Maryland Court of Special Appeals, in dicta, echoed the concern of the Ninth Circuit "that the mixed-motives test presents severe conceptual problems." *Khan v. State*, 74 A.3d 844, 852 n.3 (Md. Ct. Spec. App. 2013). The Maryland court also went so far as to state that it "doubt[ed] that a trial court could actually make such a subtle causal distinction in any given

13

trial." *Id.* The Maryland court's discussion captures the problems with the mixed-motives analysis:

> If equal protection is violated only when the challenger's race-based reason was a but-for cause of the challenge, then the race-*neutral* reason for a challenge must have been an *insufficient* cause, standing alone (otherwise, the race-based reason could not be a causative factor). Thus, the entire mixed-motive analysis is premised upon the challenger's race-neutral reason being a *motivating* factor, but somehow not motivating *enough* to cause the strike when the race-based reason is "subtracted" from the decision to challenge. As a practical matter, we cannot imagine how a trial court could make such a determination.

*Id.*

Thus, based on the Supreme Court's statements in *Snyder*, we conclude that the proper approach for a court to apply when analyzing a *Batson* challenge where both permissible and impermissible reasons are provided at the second step is to continue to the third step. At the third step, the court must determine if the peremptory strike was motivated in substantial part by discriminatory intent (race or gender). If the peremptory strike was motivated in substantial part by discriminatory intent, the challenger has met his burden of showing purposeful discrimination, as articulated in the third *Batson* step.

### 5. Application of the Ninth Circuit approach

At the third step, "a court must undertake a sensitive inquiry into such circumstantial and direct evidence of intent as may be available." *Cook*, 593 F.3d at 815 (quoting *Batson*, 476 U.S. at 93). This inquiry includes comparative juror analysis. *Id.*; *see also People v. Lenix*, 187 P.3d 946 (Cal. 2008) (thoroughly discussing comparative juror analysis as one of the tools available to an appellate court, as well as the trial court). In the context of race, the comparative juror analysis involves "side-by-side comparisons of some black venire panelists who were struck and white panelists allowed to serve." *Miller-El v. Dretke*, 545 U.S. 231, 241 (2005). According to the United States Supreme Court, "If a prosecutor's proffered reason for striking a black panelist applies just as well to an otherwise-similar nonblack who is permitted to serve, that is evidence tending to prove purposeful discrimination to be considered at *Batson's* third step." *Miller-El*, 545 U.S. at 241. In *Cook*, the Ninth Circuit engaged in comparative juror analysis and it is apparent from the analysis that the record before the *Cook* court included relevant information about the jurors that were dismissed and the jurors that were empaneled. In Ornelas' case, we have a sparse record before us. The record does not include juror information sheets that would

14

assist us in a comparative juror analysis. Nor does the record attempt to address the confusion that is found in the transcript where jurors are identified by their original juror numbers at times and at other times identified by their voir dire seat numbers. In sum, we lack sufficient information to conduct a comparative juror analysis. Further, we cannot analyze whether the district court's determination that there was no purposeful discrimination was clearly erroneous, based on "a sensitive inquiry into such circumstantial and direct evidence of intent as may be available." *Batson*, 476 U.S. at 93 (quoting *Arlington Heights*, 429 U.S. at 266). It is not apparent from the transcript that the district court considered the gender-based reason offered by the prosecutor. The district court's statement, summarily determining that there was no purposeful discrimination, went on to address the "female influence" on the jury.

For a proper resolution of this issue in Ornelas' case, we are guided by *Guzman*, 85 S.W.3d at 255, where the Texas Court of Criminal Appeals remanded the case for further proceedings. In that case, the defendant made a *Batson* challenge alleging race-based discrimination, and the prosecutor responded with race-neutral reasons, but also provided a gender-based reason for one juror. The court, after determining that the mixed-motives analysis applied, stated, "[W]e cannot tell from the present record precisely what the trial court determined concerning the prosecutor's purportedly gender-based strike of [the juror]." *Guzman*, 85 S.W.3d at 255. The court chose to remand the case to the trial court and directed the trial court to apply the mixed motives-analysis. Similarly, we cannot determine from the record before this Court what the trial court determined concerning the gender-based reason proffered by the prosecutor. Accordingly, we remand this case for further proceedings consistent with this opinion.

We note, though, that this is not the first post-*Cook* appellate decision to remand to a trial court for consideration of the analysis announced above. The Ninth Circuit panel that did remand a case did so "to give the court an opportunity to apply the proper standard, as articulated in *Cook*." *Crittenden*, 624 F.3d at 958-59.

On remand, the district court must determine if the prosecutor's peremptory strike of juror 24 was motivated in substantial part by gender. The limited determination by the court on remand may require that the court consider additional information submitted by the parties, including the juror information sheets. If the court is unable to make factual findings at the third step, or if it determines that the peremptory strike of juror 24 was motivated in substantial part by

discriminatory intent, the court should vacate Ornelas' conviction. *United States v. Rutledge*, 648 F.3d 555, 562 (7th Cir. 2011) ("The scope of the remand we are ordering is narrow. The district court must make findings on the issues we have identified. If the passage of time precludes the district court from making such findings, or if it finds that the prosecutor's reasons are not credible, it must vacate Rutledge's conviction."); *United States v. McMath*, 559 F.3d 657, 670 (7th Cir. 2009) ("Upon remand, the district court should first determine whether it can make factual findings on the *Batson* issue. If it is unable to do so or finds that McMath's challenge was meritorious, it should vacate McMath's conviction."). If the district court is able to make factual findings and determines that the peremptory strike of juror 24 was not motivated in substantial part by discriminatory intent, it should deny the *Batson* challenge.

## III.

## CONCLUSION

We conclude that the district court did not abuse its discretion by refusing to dismiss juror 13 for cause because the court was allowed to rely on juror 13's assurances. As to jurors 32 and 34, Ornelas has not shown that he was prejudiced by having to use a peremptory strike to remove the jurors. We reject Ornelas' argument that, in effect, asks this Court to overturn *Ramos* and its progeny.

We conclude that the prosecutor did offer an impermissible, gender-based reason along with permissible reasons for striking juror 24. We also conclude that when both permissible and impermissible reasons are offered at the second step of *Batson*, a court must proceed to the third step of *Batson* and determine if the peremptory strike was motivated in substantial part by discriminatory intent. Because of the sparse record in this case, and because we have announced a new standard, we remand this case to the district court for further proceedings consistent with this opinion. Therefore, we neither affirm nor vacate Ornelas' judgment of conviction.

Judge LANSING and Judge MELANSON **CONCUR.**

16