The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
September 5, 2019

## 2019COA137

**No. 15CA1517, *People v. Ojeda* — Constitutional Law — Fourteenth Amendment — Equal Protection; Juries — Peremptory Challenges — Batson Challenges**

A division of the court of appeals considers whether a trial court erred in denying a defendant his *Batson v. Kentucky*, 476 U.S. 79 (1986), challenge when a prosecutor removed a Hispanic juror from the prospective jury.

The majority agrees that the trial judge cannot supply its own reasons to justify a juror's removal and that reversal is appropriate, albeit for different reasons. Judge Fox's opinion discusses various approaches employed in examining race-based and race-neutral reasons for a *Batson* challenge and concludes that if a peremptory strike was motivated in substantial part by discriminatory intent, then the defendant has met his burden of showing purposeful

discrimination as articulated in the third *Batson* step.  Judge

Harris' special concurrence concludes that reversal is required

because the prosecution failed to state a race-neutral reason for the

juror strike, as required by the second *Batson* step.  Accordingly,

the majority reverses the judgment and remands for a new trial.

The dissent concludes that the case should be remanded to

the trial court for it to conduct the three-step *Batson* analysis and

make the required factual findings as the trial court's prior *Batson*

analysis failed to make sufficient factual findings about whether (1)

Ojeda made a prima facie showing that the peremptory strike was

based on race; (2) the prosecutor provided a race-neutral

explanation; and (3) Ojeda established purposeful discrimination.

Court of Appeals No. 15CA1517
City and County of Denver District Court No. 13CR4235
Honorable Kenneth M. Laff, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Ray Ojeda,

Defendant-Appellant.

JUDGMENT REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division IV
Opinion by JUDGE FOX
Harris, J., specially concurs
Hawthorne, J., dissents

Announced September 5, 2019

Philip J. Weiser, Attorney General, Kevin E. McReynolds, Assistant Attorney
General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Elizabeth Griffin, Deputy State
Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1    Defendant Ray Ojeda appeals the judgment of conviction entered on jury verdicts finding him guilty of various charges. He contends that the trial court erred in denying his *Batson v. Kentucky*, 476 U.S. 79 (1986), challenge when the prosecutor removed a Hispanic prospective juror from the venire. Based on the record before us, we agree that the court's denial of Ojeda's *Batson* challenge was erroneous. Accordingly, we reverse the judgment of conviction and remand for a new trial. Given this disposition, we need not address Ojeda's remaining challenges.

## I.    Applicable Facts

¶ 2    In 2015, after a six-day trial, a jury found Ojeda guilty of first degree murder, second degree kidnapping, and first degree sexual assault for events that occurred in 1997. Ojeda's trial team advanced a mistaken identity defense and strenuously challenged the prosecution's reliance on old evidence.

¶ 3    During jury selection, the prosecutor first attempted to excuse Juror R.P., a Hispanic male seated in the seventh jury position, for cause based on (1) "the content of his questionnaire"; (2) "remarks that he made in open court"; and (3) "his demeanor." She explained

1

that Juror R.P. expressed a "bias" against the criminal justice system and "visibly showed hesitation" when asked whether he could be fair. Defense counsel objected, noting that the prosecutor was mischaracterizing Juror R.P.'s answers, and highlighted Juror R.P.'s disclosure that he could be objective. Defense counsel added that Juror R.P. was one of the few Hispanic males on the venire.

¶ 4     The court then asked the prosecutor to make a further record concerning the for-cause challenge to prospective Juror R.P. and the prosecutor stated,

> With regard to what he put on his [juror] questionnaire, I found it to be significant . . . he has devoted his career to . . . quality of healthcare for individuals. And that, in my mind, very much dovetailed with [being] . . . a man of very great conviction . . . . He gave our system the lowest rating of anyone who has been asked to offer a score. I believe his score was 4. And when I asked him about the linkage between his low confidence in the system and whether or not he could be fair, he visibly showed hesitation. . . . [And,] when you look at that in-court behavior against what is clearly his commitment to his job, in terms of serving people of color and what he talked about in terms of the defendant being a person of color — he is himself a person of color — I thought that the totality of the record indicated that he has a distinctive leaning, that he

2

himself said he would have trouble in listening to the evidence.

¶ 5 Defense counsel immediately responded that the prosecutor had "mischaracterized" Juror R.P.'s answers and noted that Juror R.P. had expressly stated that he could set aside his experiences and "be objective" and that he

> clearly indicated he would follow the rules given to him by the Court. He's also one of the few Hispanic men on this entire jury panel, and under Batson, I don't know that it's appropriate to exclude him because he's Hispanic and may have something in common with the defendant in his heritage.

¶ 6 The court denied the prosecutor's for-cause challenge, finding that nothing in Juror R.P.'s feelings or life experiences indicated he would not follow the court's rules or reach a verdict based on the evidence. The court also noted that Juror R.P. is "certainly entitled to believe that people of color are not well-served in our criminal justice or medical system. There's nothing in his answers that those feelings of his life experience will affect his judgment in the case, that he won't follow the rules set forth by the Court. There's a completely inadequate record to challenge him in this case." The prosecutor then requested that the court repeat its ruling "with

3

regard to the *Batson* issue," and the court clarified that it "didn't really reach [that] issue." Instead, the court expressed that it "didn't think it was a founded challenge, regardless of [Juror R.P.'s] personal ethnicity. I just thought that he had attitudes that he was certainly entitled to have, and that there was not anywhere near a sufficient record that they would affect his ability to be a fair juror." The prosecutor did not question Juror R.P. again before later using a peremptory challenge to excuse Juror R.P.

¶ 7     The prosecutor later used her fifth peremptory challenge to excuse Juror R.P. Defense counsel asserted a *Batson* challenge because he was "obviously concerned about excusing Hispanic males from the jury." In response, the prosecutor first incorporated her previous record on Juror R.P. (from the earlier for-cause challenge), then offered the following explanation:

> To be utterly disclosing, we are pursuing a strategy of trying to select jurors who are establishmentarian, let's say, who are in favor of the system that we have. And that's one of the reasons I used a rate-the-system type of device during my voir dire.
>
> [Juror R.P.] gave our system the lowest rating possible — rather, the lowest rating that

4

anyone had given, which was a number 4, which is a matter of some concern.

[T]he jury is going to hear that there were errors on the part of the police department in terms of not having been able to locate the rape kit in this case within the property bureau for a period of years. I anticipate some very vigorous cross-examination of . . . a forensic serologist, in particular, and I anticipate that the defense is going to be very strongly attacking the Denver Police Department, the Denver Police Crime Lab, and that it will really build on the statements that have already been made during jury selection that critique the system as a whole as a way to build reasonable doubt in to secure a not guilty verdict.

And so what [Juror R.P.'s] concerns were about the system — and he said, I have a bias against the system. And so the concerns that we have do not relate in any way to the color of the skin or his national origin, but rather to his stated reservations in that regard when we know what the evidence will be and when we are now getting some pretty strong clues about what the defense will be.

¶ 8    The prosecutor continued by noting the racial composition of the jury box and of the group of prospective jurors recently struck by the defense. She then added:

Your Honor, if I could wrap up with two other thoughts that are very strongly informing our desire to exercise a strike as to [Juror R.P.]. He's a polished, educated, and, I believe,

5

persuasive individual. And because of his presentation in that regard, the concern that we have is that the critique of the criminal justice system that he has talked about, he could be very, very strongly persuasive in the jury room. That's race neutral. We see him as a person who could very much persuade others of the reservations that he has. And given what we anticipate by way of the evidence, that is the basis for attempting to eliminate him.

[And] I anticipate the defense is going to make a very strong charge against the validity and reliability of the DNA results. . . . And the fact that the defendant is a Latino male, if the jury is persuaded that there is not a DNA connection between . . . the forensic evidence in this case and this defendant, it seems to me that the comments that [Juror R.P.] made about having concerns about racial profiling will really come into play in the sense that I think that he may then steer the jury towards a race-based reason why Mr. Ojeda, you know, was charged in the case, and that is because [Juror R.P.] had talked about racial profiling in conjunction with his other considerations. Since I think that's where the defense is going — you know, we have to forecast at this stage of the game, and those are all of the race-neutral reasons why we believe that a strike is constitutional and not racially motivated as to [Juror R.P.].

¶ 9     Defense counsel responded that "[w]ith respect to [Juror R.P.], I think [the prosecutor] made my argument for me. She's concerned about a race-based argument being made by [Juror R.P.]

because he's Hispanic."  In explaining why the peremptory challenge was based on race-neutral factors, the court stated:

> The Court will deny the challenge for cause as to [Juror R.P.], but there are abundant race-neutral reasons for a peremptory to be exercised.  First of all, he too is a victim of a sex assault, as is his wife, and he struck the Court as remarkably unconcerned about those events in his own lifetime.  His first thought when there was a discussion of the time [it has] taken to bring this case was that the victim had delayed disclosure.  He does have an anti-law enforcement bend, so the Court finds there's a sufficient racially neutral basis for the challenge.

¶ 10    Immediately following the court's ruling, the prosecutor supplemented her record by noting that her notes reflected that when Juror R.P. heard the age of the case, he thought something might have gone wrong, which also caused her "particular concern."

## II.    Law and Review Standard

¶ 11    The Equal Protection Clause of the Fourteenth Amendment forbids a challenge to a potential juror based solely on race. *Batson*, 476 U.S. at 89; *see also People v. Wilson*, 2015 CO 54M, ¶ 10 n.4.  When a party raises a *Batson* challenge, the trial court engages in a three-step analysis to assess the claim of racial discrimination.  *Wilson,* ¶ 10.  First, the opponent of the peremptory

7

strike must allege a prima facie case showing that the striking party struck the prospective juror on the basis of race. *Id.* Second, the burden shifts to the striking party to provide a race-neutral explanation for excusing the prospective juror. *Id.* The opponent is then given the opportunity to rebut the striking party's explanation. *Id.*

¶ 12 At step three, the trial court must assess the striking party's actual subjective intent and the plausibility of its nondiscriminatory explanations to determine whether the opponent has sufficiently established purposeful discrimination. *Id.*; *see also Miller-El v. Dretke*, 545 U.S. 231, 252 (2005). If the opponent's "stated reason does not hold up, its pretextual significance does not fade because a trial judge . . . can imagine a reason that might not have been shown up as false." *Miller-El*, 545 U.S. at 252.

¶ 13 Significantly, it is improper for a trial court to "sua sponte offer[] its own plausible reasons behind the peremptory strike[] at issue[.]" *Valdez v. People*, 966 P.2d 587, 592 n.11 (Colo. 1998); *see also Miller-El*, 545 U.S. at 252 ("The Court of Appeals's and the dissent's substitution of a reason for eliminating [the juror] does

nothing to satisfy the prosecutors' burden of stating a racially neutral explanation for their own actions."); *People v. Rodriguez*, 2015 CO 55, ¶ 15 n.5 (concluding that the trial court never evaluated the validity of the prosecutor's justification because it based its ruling on a different race-neutral explanation than the one offered by the prosecution).

¶ 14    We review steps one and two of a *Batson* challenge de novo. *Rodriguez*, ¶ 13. But, the trial court's conclusion at step three is "an issue of fact to which an appellate court should defer, reviewing only for clear error." *Id.* We will "set aside a trial court's factual findings only when they are so clearly erroneous as to find no support in the record." *People v. Beauvais*, 2017 CO 34, ¶ 22. If the record shows that the trial court failed to adequately conduct a *Batson* analysis, the appropriate procedure is to remand the case for more detailed findings by the trial court. *Rodriguez*, ¶ 21.

### III.    Analysis

¶ 15    In addressing the *Batson* challenge at issue, the trial court did not, as it should have, explicitly evaluate the prosecutor's proffered reasons for striking Juror R.P. *See Beauvais*, ¶ 9; *see also Batson*,

476 U.S. at 98 (requiring the prosecutor to "articulate a neutral explanation related to the particular case to be tried"); *Purkett v. Elem*, 514 U.S. 765, 770 (1995) (Stevens, J., dissenting) (recognizing that the prosecutor's explanation must relate to the case at issue). Instead, the court sua sponte offered two race-neutral reasons to justify striking Juror R.P.: (1) that Juror R.P. and his wife were not only sexual assault victims themselves, but that Juror R.P. seemed "remarkably unconcerned" about those life experiences; and (2) that Juror R.P. surmised the age of the case might be attributed to the victim's delayed disclosure. Although the prosecutor later agreed with the second reason the court offered, the prosecutor did not initially offer either reason as a basis for her peremptory strike.

¶ 16 Before more closely examining the prosecutor's reasons for the strike, it is useful to look to those jurisdictions that have encountered race-based and race-neutral reasons supporting a *Batson* challenge.

  A. Multiple Justifications for a Peremptory Strike

¶ 17 Jurisdictions examining race-based and race-neutral reasons supporting a *Batson* challenge have generally considered three

10

approaches to the issue: (1) the per se approach; (2) a mixed-motive approach; and (3) the substantial motivating factor approach. Neither the United States Supreme Court nor Colorado's Supreme Court has adopted a governing approach. *See Snyder v. Louisiana,* 552 U.S. 472, 485 (2008) (not deciding whether mixed-motive analysis applies in a *Batson* context); *Rodriguez,* ¶ 15 n.5 (while the trial court had based its ruling on a different race-neutral explanation than the one the prosecution offered, the Colorado Supreme Court did not elaborate on how it would evaluate peremptory challenges where multiple reasons — race-based and race-neutral — are offered). I provide a brief overview of the three approaches.

¶ 18    The per se approach provides that a "a racially discriminatory peremptory challenge in violation of *Batson* cannot be saved because the proponent of the strike puts forth a non-discriminatory reason." *State v. Shuler,* 545 S.E.2d 805, 811 (S.C. 2001); *see also State v. King,* 572 N.W.2d 530, 535 (Wis. Ct. App. 1997) ("[W]here the challenged party admits reliance on a prohibited discriminatory characteristic . . . a response that other factors were also used is

11

[in]sufficient rebuttal under the second prong of *Batson*.").  Thus, under the per se approach, an improper juror challenge cannot be saved.

¶ 19    Under the mixed-motive approach, "[o]nce the claimant has proven improper motivation, dual motivation analysis is available to the person accused of discrimination to [challenge the issue] by showing that the same action would have been taken in the absence of the improper motivation that the claimant has proven."  *Howard v. Senkowski*, 986 F.2d 24, 27 (2d Cir. 1993); *see also Gattis v. Snyder*, 278 F.3d 222, 232-35 (3d Cir. 2002); *Wallace v. Morrison*, 87 F.3d 1271, 1274-75 (11th Cir. 1996); *United States v. Darden*, 70 F.3d 1507, 1531-32 (8th Cir. 1995); *Jones v. Plaster*, 57 F.3d 417, 420-22 (4th Cir. 1995).  Stated differently,

> after the defendant makes a prima facie showing of discrimination, the state may raise the affirmative defense that the strike would have been exercised on the basis of the []neutral reasons and in the absence of the discriminatory motive.  If the state makes such a showing, the peremptory challenge survives constitutional scrutiny.

*Gattis*, 278 F.3d at 233. Thus, a challenge under the mixed-motive approach may be saved if the state's race-neutral reason is persuasive.

¶ 20     Under the substantial motivating factor approach, the proper inquiry is "whether the prosecutor was 'motivated in substantial part by discriminatory intent.'" *Cook v. LaMarque*, 593 F.3d 810, 814-15 (9th Cir. 2010) (quoting *Snyder*, 552 U.S. at 1212). "To determine whether race was a substantial motivating factor — that is, whether the defendant has shown 'purposeful discrimination' at *Batson*'s third step — the trier of fact must evaluate 'the persuasiveness of the justification[s]' offered by the prosecutor." *Id.* Unlike the mixed-motive approach, this approach does not allow the prosecutor to argue that he would have challenged the juror even absent the discriminatory basis. *See Kesser v. Cambra*, 465 F.3d 351, 376 (9th Cir. 2006) (Berzon, J., concurring).

¶ 21     The per se approach is the most faithful to the principles outlined in *Batson*, but the mixed-motive approach is, arguably, consistent with United States Supreme Court equal protection precedent in non-*Batson* contexts. *See, e.g., Mt. Healthy City Sch.*

13

*Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977) (noting that the district court should have determined whether the board of education could show by a preponderance of evidence that it would have reached the same decision not to rehire a teacher who engaged in constitutionally protected speech in the absence of the teacher's protected conduct); *see also Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 271 (1977) (plaintiffs failed to carry their burden of showing that a discriminatory purpose was a substantial motivating factor in an agency's decision to deny a rezoning application). *But see* Lisa M. Cox, Note, *The "Tainted Decision-Making Approach": A Solution for the Mixed Messages* Batson *Gets from Employment Discrimination*, 56 Case W. Res. L. Rev. 769, 782-89 (2006) (describing the civil law origin of mixed-motive analysis and arguing it should not be extended in the *Batson* context). The United States Supreme Court does not appear poised to adopt the per se standard in *Batson* cases. The Supreme Court mentioned — without adopting — the substantial motivation standard in *Snyder* in 2008, 552 U.S. at 485, and more recently, in

14

*Tharpe v. Sellers*, 583 U.S. __, 138 S. Ct. 545 (2018), it indicated

skepticism about a per se rule.

¶ 22     In *Tharpe*, a black defendant moved to reopen his federal

habeas corpus proceeding regarding his claim that the Georgia jury

that convicted him of murdering his sister-in-law included a white

juror who was biased against him and had voted for the death

penalty because he was black.  *Id.* at __, 138 S. Ct. at 546-47.  In

returning the matter to the court of appeals, the majority thought it

debatable whether the defendant had shown prejudice even after

producing an affidavit from the white juror that expressed racist

opinions about blacks.  *Id.* at __, 138 S. Ct. at 546-49.  The Court

did not hold that the affidavit alone (demonstrating racial animus)

required a per se finding that supported defendant's petition, much

less an automatic reversal of his death sentence.  *Id.*  The white

juror later recanted the contents of his first affidavit.  *Id.*  It is

unclear how much this recantation factored into the Court's

observation regarding the defendant's showing of prejudice.  But, it

appears from *Tharpe* that a judgment of conviction need not be

automatically, and always, set aside whenever discriminatory

animus is shown even though the evidence also shows that such animus may not have been the determinative factor ultimately leading to the conviction.

### B. Discussion and Application of the "Substantial Motivating Factor" Approach

¶ 23 Recognizing the inherent risk in predicting what the Supreme Court may do, in my view, the substantial motivating factor standard offers the most flexibility and is the one Colorado should adopt. Of course, most of the above-referenced cases pre-date the Supreme Court's 2008 *Snyder* decision and the 2018 *Tharpe* decision. Thus, the reasoning of the pre-*Snyder* and pre-*Tharpe* opinions is not as helpful as is the Idaho Court of Appeal's 2014 decision in *State v. Ornelas*, 330 P.3d 1085 (Idaho Ct. App. 2014), which I find persuasive.

¶ 24 *Ornelas* read *Snyder* as setting "a guideline that a peremptory strike violates the Equal Protection Clause when the strike is 'motivated in substantial part by discriminatory intent.'" *Id.* at 1094 (quoting *Synder*, 552 U.S. at 485). In *Ornelas*, the government did not challenge that Ornelas made a prima facie showing under *Batson.* *Id.* The court thus proceeded to determine

16

if the prosecutor supplied a gender-neutral reason to strike Juror 24, a female. *Id.* The prosecutor, admitting he wanted a woman on the panel, also offered that he struck Juror 24 because she was young, lacked life experience, and had a child near the victim's age. *Id.* at 1091. The appellate court accepted the last three reasons as gender-neutral. *Id.* Adopting the Ninth Circuit's approach in *Cook*, 593 F.3d at 814-15, the *Ornelas* court inquired whether the strike was "motivated in substantial part by discriminatory intent." *Ornelas*, 330 P.3d at 1093 (quoting *Cook*, 593 F.3d at 814-15). The *Ornelas* court noted that Juror 24's gender could have substantially motivated the decision to strike her, but ultimately opted to remand for the trial court to supplement the record. *Id.* at 1097.

¶ 25 *Ornelas* held that when analyzing a *Batson* challenge where permissible and impermissible reasons are provided, the court should determine if the peremptory strike was motivated in substantial part by discriminatory intent. *See id.* at 1094. If the peremptory strike was motivated in substantial part by discriminatory intent, the challenger meets his burden of showing

purposeful discrimination, as articulated in the third *Batson* step. *Id.*

¶ 26    Here, although the prosecutor claimed concern with Juror R.P.'s views about the criminal justice system, Juror R.P.'s views were inextricably linked to being a Hispanic male who had experienced racial profiling, as he disclosed in his questionnaire. *See State v. McRae*, 494 N.W.2d 252, 257 (Minn. 1993) (concluding that the prosecutor failed to articulate a race-neutral basis supported by the record for excluding a black prospective juror who expressed doubt about a system that disproportionately affects black men); *People v. Mallory*, 993 N.Y.S.2d 609, 612 (N.Y. App. Div. 2014) (holding that the People failed to offer a race-neutral reason for a peremptory strike where the prosecutor explicitly referenced race in explaining his reasons for challenging one of the prospective jurors and where the prospective juror responded by stating "that '[s]ometimes' police officers unfairly target minorities"). *But cf. Ananaba v. State*, 755 S.E.2d 225, 227 (Ga. Ct. App. 2014) (concluding that the use of peremptory challenges on three African-American venire members because of their prior bad experiences

with law enforcement officers was a race-neutral reason). Where the clear focus of the prosecutor in striking Juror R.P. was Juror R.P.'s perception that the criminal justice system disproportionately affects people of color and those with mental disabilities, it is impossible not to conclude that the strike at issue was substantially motivated by Juror R.P.'s race. *See Batson*, 476 U.S. at 106 (Marshall, J., concurring) (noting that "'seat-of-the-pants instincts' may often be just another term for racial prejudice").

¶ 27 The trial court aptly recognized that Juror R.P. was "entitled to believe that people of color are not well-served in our criminal justice" system, noting that his answers did nothing to indicate that "those feelings of his life experience will affect his judgments in the case, that he won't follow the rules . . . There's no indication he couldn't follow my instructions and reach a verdict based on the evidence." The trial court heard nothing from Juror R.P. to suggest that having experienced racial profiling himself would affect his ability to decide a case with no allegations of profiling based on the evidence presented. The prosecution's concern that R.P. and defendant are "person[s] of color" would somehow lead R.P. to have

"trouble listening to the evidence" is precisely what *Batson* warned against:

> [T]he prosecutor may not rebut the defendant's prima facie case of discrimination by stating merely that he challenged jurors of defendant's race on the assumption — or his intuitive judgment — that they would be partial to the defendant because of their shared race.

*Batson*, 476 U.S. at 97. And, as discussed below, the reasons the prosecutor articulated on the record are not the sort of race-neutral explanations the Supreme Court contemplated in *Batson* and later cases.

¶ 28     Attributing "a distinctive leaning" to Juror R.P., as this prosecutor did, because of his life experiences perpetuates the race-based stereotypes *Batson* eschewed. To the extent the prosecutor suggested that Juror R.P. "would have trouble in listening to the evidence," the record soundly refutes that claim. *See People v. Collins*, 187 P.3d 1178, 1183 (Colo. App. 2008) (reversing where "[a]t least three of the race-neutral reasons articulated by the prosecutor are affirmatively refuted by the record[]"). Juror R.P. repeatedly reiterated that he would listen to all the evidence and follow the court's instructions. The trial court recognized as much

20

in denying the prosecutor's for-cause challenge. *See Foster v. Chatman*, 578 U.S. __, __, 136 S. Ct. 1737, 1749 (2016) (The Supreme Court's "independent examination of the record" revealed that "much of the reasoning provided by [the prosecution had] no grounding in fact.").

¶ 29　　The prosecutor adopted the second reason the trial court supplied in allowing Juror R.P. to be struck related to his response to the delay issue.[1]　Although the court and the prosecution remembered only one reason Juror R.P. offered in speculating why

_____

[1] The trial court's first supplied reason to strike Juror R.P. — his lack of concern over his prior experience with sexual assault — is irrelevant, *see People v. Rodriguez*, 2015 CO 55, ¶ 15 n.5, where the prosecutor did not adopt it.  As to Juror R.P.'s experience with sexual assault, the prosecutor was well aware of that experience from R.P.'s juror questionnaire and did not rely upon it in seeking to excuse him.  Moreover, Juror K.P. was deemed to be a suitable juror even though his questionnaire disclosed that his daughter was the victim of "incest, sexual assault, or inappropriate sexual behavior."  The prosecutor never explained why Juror K.P.'s background was deemed acceptable but Juror R.P.'s would not be.  *See Miller-El v. Dretke*, 545 U.S. 231, 241 (2005) (If the proffered reason for striking a black panelist applies equally to "an otherwise-similar nonblack who is permitted to serve, that is evidence tending to prove purposeful discrimination.").  Notably, the record discloses that both parties had earlier accepted Juror R.P.'s and Juror K.P.'s similar assurances that their prior experiences with sexual assault would not affect their judgment in this case.

a 1997 crime would not be tried until 2015, the record discloses

that Juror R.P. offered several logical reasons — and never

indicated he would not accept other explanations — for the delayed

proceedings presented during trial.  The operative questioning is as

follows:

> [PROSECUTOR to R.P.]: Did you hear the year in which this case took place?
>
> [JUROR R.P.]: I believe it was '96.
>
> [PROSECUTOR]: And when you heard that it was a case from some years ago, did you have any response in your gut to think oh, a number of years have passed, and here we are prosecuting the case?
>
> [JUROR R.P.]: Yes.
>
> [PROSECUTOR]: Did you have any feelings that were associated with that?
>
> [JUROR R.P.]: Yeah.  Why so long, and what has happened?  Maybe the person didn't disclose for some reasons, the victim?  Or maybe there was a mistrial before, or you know, something went awfully wrong for so many years to have gone by.
>
> [PROSECUTOR]: Is there anybody else here — I saw some heads nodding.  Is there anybody else here who when the judge said that it was a case from 1997, that that pinged somewhere in your mind, that it at least registered?  Pretty much everyone.  Is there anyone here . . .

[who] said you shouldn't be prosecuting somebody from '97? How can that person defend themselves from a case that's so old?

Several other potential jurors expressed concerns about the age of the case, but those jurors were not struck.

¶ 30     That the prosecutor later tried to characterize her objections to Juror R.P.'s service as objections to his anti-establishment bent is of no moment and smacks of pretext. *See, e.g.*, *United States v. Bishop*, 959 F.2d 820, 826 (9th Cir. 1992) (concluding that the reason offered — that the juror lived in a high crime area plagued by uneasy police relations — was really a proxy for race), *overruled on other grounds, United States v. Nevils*, 598 F.3d 1158, 1167 (9th Cir. 2010); *Rector v. State*, 444 S.E.2d 862, 864-65 (Ga. Ct. App. 1994) (the prosecutor suggested that he struck a black, gold-toothed prospective juror because the gold tooth suggested to him that the juror was thumbing her nose at society; the court rejected the excuse, noting that the gold tooth had "nothing to do with [her] ability to perform as a juror"); *McCormick v. State*, 803 N.E.2d 1108, 1111 (Ind. 2004) (concluding that the reason provided — that the juror would find it difficult "passing judgment on a

23

member of one[']s own in the community" — was not facially race-neutral).

¶ 31    The court briefly mentioned Juror R.P.'s alleged "anti-law enforcement bend." While the record is unclear regarding whether the court found that reason, standing alone, sufficient, remanding this case to the trial court to make additional findings of fact and conclusions of law, *see Rodriguez*, ¶ 19, is not useful here where the record discloses that the non-neutral reasons the prosecutor offered lacked record support (or were contradicted by the record) and where the trial court itself earlier acknowledged that Juror R.P. was "entitled to believe people of color are not well-served in our criminal or medical system" and that nothing in his answers or his life experience indicated that it would "affect his judgement in this case."

¶ 32    As to the other race-neutral reasons the prosecutor provided for striking Juror R.P., other non-Hispanic prospective jurors expressed views similar to the views of, or had similar attributes as, Juror R.P., *see Miller-El*, 545 U.S. at 241:

- First, regarding the prosecutor's objection that Juror R.P. was "polished, educated," and persuasive, nine of the jurors who served had at least a bachelor's degree and a few had graduate educations. With regards to his specific education, Juror C.B., like Juror R.P., revealed that she worked in the health field as a nurse. *See Reynoso v. Hall*, 395 F. App'x 344, 349 (9th Cir. 2010) (reversing where the record clearly refuted prosecutor's proffered reason of lack of education for striking a prospective juror where five white jurors had similar education levels).

- Second, the prosecutor's asserted concern with Juror R.P. having strong opinions is curious because she asked other prospective jurors if they would be strong enough to assert themselves, revealing a concern that those jurors might be weak and unduly influenced. *See Reed v. Quarterman*, 555 F.3d 364, 379-80 (5th Cir. 2009) (prosecution's surmises about stricken juror were found to be pretextual where other white jurors had also expressed nearly identical concerns but were not struck or questioned further); *Hardcastle v. Horn*, 521 F. Supp. 2d 388, 405-08 (E.D. Pa. 2007) (rejecting

25

proffered race-neutral reasons for striking nonwhite potential jurors — young, single, unemployed, and unmarried — where three other Caucasian women fit a similar description but were not struck); *Killebrew v. State*, 925 N.E.2d 399, 402-03 (Ind. Ct. App. 2010) (refusing to credit the prosecutor's excuse that the juror struck was too "emphatic" and finding that there was no meaningful distinction between how the struck juror and other white panelists described the applicable burden).

Juror R.P. occupied the seventh seat of the initial jury pool. Of the first thirteen jurors seated — before any were struck — three were Hispanic (occupying seats four, seven, and nine), and the record reflects that eight Hispanic surnamed people were excused from jury service before the first and only Hispanic was seated. That one Hispanic juror ultimately served in no way cures a *Batson* violation; even one improper strike violates the Equal Protection Clause. *Lancaster v. Adams*, 324 F.3d 423, 434 (6th Cir. 2003) (subsequent selection of an African-American for the jury did not cure the prosecutor's *Batson* violation); *Fernandez v. Roe*, 286 F.3d 1073, 1079 (9th Cir. 2002) (concluding that the prosecutor

disproportionately struck Hispanics from the jury box even though one Hispanic juror ultimately sat on the jury).

¶ 33 Purposeful discrimination in jury selection harms litigants and the individual jurors who are wrongfully excluded and diminishes the public's confidence in the fairness of judicial proceedings. *Batson*, 476 U.S. at 87; *see Georgia v. McCollum*, 505 U.S. 42, 49 (1992). "The need for public confidence in our judicial process and the integrity of the criminal justice system is 'essential for preserving community peace.'" *People v. Cerrone*, 854 P.2d 178, 196 (Colo. 1993) (Scott, J., dissenting) (quoting *McCollum*, 505 U.S. at 49). It is therefore "of paramount importance that the community believes we guarantee even-handed entry into our criminal justice system by way of the jury panel." *Id.* (Scott, J., dissenting). That is precisely why "[t]he 'Constitution forbids striking even a single prospective juror for a discriminatory purpose.'" *Foster*, 578 U.S. at __, 136 S. Ct. at 1747 (quoting *Snyder*, 552 U.S. at 478); *see also Powers v. Ohio*, 499 U.S. 400, 411 (1991) ("[R]acial discrimination in the selection of jurors 'casts doubt on the integrity of the judicial process' and places the

fairness of a criminal proceeding in doubt." (quoting *Rose v. Mitchell*, 443 U.S. 545, 556 (1979))).

¶ 34 Not only did the trial court improperly supply independent reasons to strike Juror R.P., which it was not supposed to do, *Valdez*, 966 P.2d at 592 n.11 (a trial court may not interject its own nondiscriminatory reasons, even if supported by the record), but it also failed to recognize that the record refutes most of the prosecutor's proffered excuses. Thus, the record clearly discloses that the trial court erred in denying the *Batson* challenge at issue here.

## IV. Conclusion

¶ 35 The judgment of conviction is reversed, and the case is remanded for a new trial.

JUDGE HARRIS specially concurs.

JUDGE HAWTHORNE dissents.

JUDGE HARRIS, specially concurring.

¶ 36    Defendant Ray Ojeda was convicted, on strong evidence, of a horrific series of crimes.  Regardless, he had a "right to be tried by a jury whose members are selected pursuant to nondiscriminatory criteria."  *Batson v. Kentucky*, 476 U.S. 79, 85-86 (1986).  Because I conclude that this right was violated, I agree with Judge Fox that the judgment must be reversed.

¶ 37    But I write separately because, unlike Judge Fox, I do not believe that the prosecution satisfied even its minimal burden at step two of the *Batson* analysis to state a race-neutral reason for striking Juror R.P.  Like the district court, I can conceive of race-neutral reasons to strike the juror.  But by her own admission, the prosecutor struck Juror R.P. based on her concern that as a "polished" "person of color" with both a commitment to "serving people of color" and a relatively low opinion of the criminal justice system, he would likely persuade other jurors that the police had racially profiled Ojeda who, the prosecutor reminded the court, is also "a person of color."  In my view, a discriminatory intent is "inherent" in the prosecutor's explanation, and therefore it does not

29

qualify as race-neutral. *Hernandez v. New York,* 500 U.S. 352, 360 (1991).

## I. Applicable Facts

¶ 38 Ojeda was charged with kidnapping, sexually assaulting, and shooting a fifteen-year-old girl in 1997. The victim reported the crime immediately, but she could not identify the perpetrator and the case went cold. Years later, the police retested evidence from the victim's rape kit; DNA from the vaginal swab matched Ojeda.

¶ 39 At the trial in 2015, prospective jurors completed a questionnaire that asked, among other things, whether they, a friend, or a relative had been the victim of a sexual assault; whether they had friends or relatives in law enforcement; and whether they or a family member had ever had a particularly good or bad experience with a police officer.

¶ 40 Juror R.P. disclosed that he and his ex-wife had been victims of sexual misconduct or assault, that he had a friend in law enforcement, and that he or a family member had been "racially profil[ed]." Because he answered the first question affirmatively, Juror R.P., like at least a dozen other jurors, was questioned

individually by counsel. He explained that the "inappropriate sexual behavior" he had encountered, as well as his ex-wife's separate experience, occurred in the mid-1980s, before they were married. Neither defense counsel nor the prosecutor expressed any concern about Juror R.P.'s answers.

¶ 41 Later, during group voir dire, the prosecutor asked eight of the prospective jurors to rate the criminal justice system on a scale of one to ten. Two jurors rated the system a nine or ten, but of the other six jurors, two rated it a four, three gave it a five or six, and one rated it a six or seven. Juror R.P. gave the system a score of four. He acknowledged that he had "a little bit of a bias on the system itself," explaining that he had "worked with communities of color," and he "[did] know that the criminal justice system is disproportionately filled with people of color and folks with mental disabilities." He admitted that, while he would try not to let his views affect him as a juror, his feelings about the system might color the way he "hear[d] and weigh[ed] the evidence in the case."

¶ 42 The prosecutor also asked Juror R.P. whether he had a "response in [his] gut" to the delay in bringing the case to trial.

Juror R.P. said that the delay raised questions: "Maybe the person didn't disclose for some reason, the victim? Or maybe there was a mistrial before, or you know, something went awfully wrong for so many years to have gone by."

¶ 43 The prosecutor challenged Juror R.P. for cause. She said that her challenge was based on the content of Juror R.P.'s questionnaire, the remarks he made during general voir dire, and his demeanor.

¶ 44 As for the questionnaire, she observed that Juror R.P. worked in a field "ha[ving] to do with a quality of healthcare for individuals." Next, she turned to Juror R.P.'s voir dire comments, focusing on his "bias against the system." She construed his comment as an admission that his bias would "impact his ability to listen to both sides" and said that he "visibly showed hesitation" about his ability to be fair. She then summed up her concerns:

> And I believe that when you look at that
> in-court behavior against what is clearly his
> commitment to his job, in terms of serving
> people of color and what he talked about in
> terms of the defendant being a person of color
> — he is himself a person of color — I thought
> that the totality of the record indicated that he
> has a distinctive leaning, that he himself said

he would have trouble listening to the evidence.

¶ 45     Defense counsel objected to the prosecutor's challenge on various grounds. Then he noted that Juror R.P. was "one of the few Hispanic men on this entire jury panel." He argued that, under *Batson*, the prosecutor could not "exclude him just because he's Hispanic and may have something in common with the defendant in his heritage." The prosecutor did not dispute defense counsel's characterization of the basis of her challenge.

¶ 46     The district court denied the prosecutor's for-cause challenge, finding that "there's a completely inadequate record to challenge him in this case." The court clarified, however, that it had not made any findings under *Batson.*

¶ 47     When it came time to exercise peremptory strikes, the prosecutor used her last strike to excuse Juror R.P. Defense counsel raised a *Batson* objection. Without awaiting a ruling from the court on whether Ojeda had made out a prima facie case of discrimination, the prosecutor proceeded to articulate her rationale for striking Juror R.P.

¶ 48     First, she expressly incorporated her comments related to her earlier for-cause challenge.  Then, she expanded on those comments, emphasizing the same underlying theme.  She told the court that Juror R.P. would be a bad juror in light of the weaknesses in the prosecution's case.  She explained that the jury would hear that the police had misplaced the victim's rape kit and she anticipated vigorous cross-examination concerning the DNA evidence recovered from the kit years later.  Juror R.P.'s reservations about the system might make him more skeptical of the prosecution's evidence, she said.  The problem was that because the "defendant is a Latino male," and Juror R.P. had discussed his own concerns about being racially profiled, Juror R.P. (a "polished, educated," and "persuasive individual") might then "steer the jury towards a race-based reason why" Ojeda was "charged in the case."  The prosecutor also noted that the jury still included a man of Middle Eastern descent, a "gentleman who is literally, not metaphorically, but literally of African-American descent," another black man, and a Hispanic man.

¶ 49    Defense counsel disputed that the prosecutor's reasons were race-neutral: "With respect to [Juror R.P.], I think [the prosecutor] made my argument for me.  She's concerned about a race-based argument being made by [Juror R.P.] because he's Hispanic."

¶ 50    The district court, though, found "abundant race-neutral reasons for a peremptory to be exercised," even if they were not the reasons given by the prosecutor.  Juror R.P. and his ex-wife were both victims of sexual assault, the court said, and Juror R.P. "struck the Court as remarkably unconcerned about those events in his own lifetime."  As well, Juror R.P.'s "first thought" when the prosecutor asked about the delay in bringing the case to trial "was that the victim had delayed disclosure."  And then there was Juror R.P.'s "anti-law enforcement ben[t]," which the court did not explain further.  According to the court, these reasons provided "a sufficient racially neutral basis for the challenge."

¶ 51    Defense counsel did not challenge any of the court's reasons as pretextual, presumably because he had already challenged the prosecutor's separate reasons as race-based.  Consequently, the court's finding of a race-neutral basis for the strike constituted its

35

final ruling on Ojeda's *Batson* objection. Following the court's ruling, the prosecutor added that she, too, had "taken a note" about Juror R.P.'s comments concerning the delay and that they were "of particular concern."

¶ 52   The jury convicted Ojeda as charged, and the court sentenced him to 144 years in prison.

## II.  Law and Review Standard

¶ 53   The Equal Protection Clause of the Fourteenth Amendment forbids striking a prospective juror for a discriminatory purpose. *Snyder v. Louisiana*, 552 U.S. 472, 478 (2008). "Discriminatory purpose" means that the decision-maker selected a particular course of action "at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Hernandez v. New York*, 500 U.S. 352, 360 (1991) (quoting *Pers. Adm'r v. Feeney*, 442 U.S. 256, 279 (1979)).

¶ 54   The Supreme Court has outlined a three-step process for determining when a peremptory strike is discriminatory:

> [O]nce the opponent of a peremptory challenge
> has made out a prima facie case of racial
> discrimination (step one), the burden of
> production shifts to the proponent of the strike

36

to come forward with a race-neutral explanation (step two).  If a race-neutral explanation is tendered, the trial court must then decide (step three) whether the opponent of the strike has proved purposeful racial discrimination.

*Purkett v. Elem,* 514 U.S. 765, 767 (1995).

¶ 55    At the second step of the analysis, the issue is the facial validity of the prosecutor's explanation.  *Valdez v. People,* 966 P.2d 587, 590 (Colo. 1998).  Thus, the second step of the process does not demand an explanation that is persuasive or even plausible.  *Hernandez,* 500 U.S. at 360.  The reason need only be race neutral.  A race-neutral reason is "an explanation based on something other than the race of the juror."  *Id.*; *see also People v. Mendoza,* 876 P.2d 98, 101 (Colo. App. 1994) (at step two of *Batson* analysis, prosecutor must offer an explanation for the strike "based on something other than race").  If a discriminatory purpose is "inherent in the prosecutor's explanation," the reason offered cannot be deemed race neutral.  *Hernandez,* 500 U.S. at 360.

¶ 56    While "[c]ircumstantial evidence of invidious intent may include proof of disproportionate impact," *Batson,* 476 U.S. at 93, the required showing under *Batson* requires more than a

demonstration that the prosecutor's proffered reason has a racially disproportionate impact or "is related to the issue of race," *Akins v. Easterling*, 648 F.3d 380, 388 (6th Cir. 2011).  Still, the prosecutor "may not rebut the defendant's prima facie case of discrimination by stating merely that [s]he challenged jurors of the defendant's race on the assumption — or [her] intuitive judgment — that they would be partial to the defendant because of their shared race." *Batson*, 476 U.S. at 97.

¶ 57    In evaluating the race neutrality of the prosecutor's explanation, a court must determine whether, assuming the proffered reason for the peremptory challenge is true, the challenge is based on something other than race or whether it is race-based and therefore violates the Equal Protection Clause as a matter of law.  *Hernandez*, 500 U.S. at 359.  Accordingly, we apply a de novo standard when reviewing the second step of the *Batson* analysis. *Valdez*, 966 P.2d at 590.

III.  Analysis

A.

¶ 58    Ojeda argues that the district court clearly erred at step three of the *Batson* analysis.  And Judge Fox persuasively credits his view of the record.  But in my view, the district court did not conduct a step three analysis, nor could it have under the circumstances.

¶ 59    The trial court's task at step three is to determine whether the objecting party proved that the striking party exercised peremptory challenges with a discriminatory purpose.  *People v. Beauvais*, 2017 CO 34, ¶ 23.  The crux of the task is discerning whether the race-neutral reason for the strike is merely a pretext for a race-based decision.  *See People v. Rodriguez*, 2015 CO 55, ¶ 12. To make that determination, the court considers the striking party's demeanor, the plausibility of the explanation, and whether the proffered rationale has some basis in accepted trial strategy. *Beauvais*, ¶ 23.

¶ 60    So, in the typical third step case, the prosecutor has explained the strike by asserting, for example, that the juror has a mustache and a beard, *see Purkett*, 514 U.S. at 769, or that the juror would be preoccupied with other obligations, *see Snyder*, 552 U.S. at 478. Then it is up to the defendant to show by a preponderance of the

evidence that these are not the true reasons for the strike and, instead, the "'discriminatory hypothesis' better fits the evidence." *People v. Wilson*, 2015 CO 54M, ¶ 14.

¶ 61   But here, the prosecutor did not claim that she had struck Juror R.P. because he had glasses or was reading a magazine during voir dire; she claimed she struck Juror R.P. because, as a person of color who had some concerns about the criminal justice system, he was likely to rally the jury around a theory of the case — racial profiling — that might seem plausible because of some purported weaknesses in the prosecution's case and because the defendant, too, was Hispanic.  And defense counsel did not argue that the proffered reason for the strike was false and merely a pretext for discrimination; he accepted the reason as true and argued that it was expressly based on the juror's race.  In response, the trial court did not determine that the prosecutor's reason was race neutral and then consider the question of pretext; rather, it offered three race-neutral reasons of its own that might have justified the prosecutor's strike and then overruled Ojeda's *Batson* objection.

¶ 62     Therefore, like Judge Fox, I see no reason to remand to the trial court for a hearing at which the court would determine whether the prosecutor's explanation for the strike was pretextual. In my view, that procedure is unnecessary not because the prosecutor's reason was clearly pretextual but because it was clearly race-based — that is, a discriminatory purpose was "inherent in the prosecutor's explanation." *Hernandez,* 500 U.S. at 360.

## B.

¶ 63     As an initial matter, all three members of the division agree that the trial court cannot supply its own race-neutral reasons for the prosecutor's strike. *See Valdez,* 966 P.2d at 592 n.11. That constitutes error because, under *Batson,* the question is not an objective one — could a race-neutral reason be divined from the record? — but a subjective one — did the prosecutor strike the juror based on race? *See Miller-El v. Dretke,* 545 U.S. 231, 252 (2005) (The focus is on the striking party's "stated reason," regardless of whether "a trial judge, or an appeals court, can imagine a reason that might" withstand scrutiny.).

41

¶ 64    Relying on *Beauvais*, the People contend that the court's reliance on its own race-neutral reasons for the strike does not amount to a finding that the prosecutor's stated reasons were race-based.  They say that in finding "abundant" race-neutral grounds for striking Juror R.P., the court "implicitly credited" the prosecutor's proffered grounds.  I am not persuaded.

¶ 65    In response to the *Batson* objection, the prosecutor launched into a long explanation, reiterating and expanding on her proffered reason for raising the earlier for-cause challenge to Juror R.P. (Indeed, the reasons were so closely tied that the court prefaced its *Batson* ruling by stating that it would "deny the challenge for cause.")  The trial court did not *accept* the prosecutor's reasons, albeit without making specific credibility findings, as the trial court did in *Beauvais*.[2]  Instead, the court *disregarded* the prosecutor's

---

[2] In *People v. Beauvais*, 2017 CO 34, the defendant raised a *Batson* objection after the prosecutor exercised all of his peremptory strikes against female jurors.  *Id.* at ¶ 6.  The trial court considered all of the prosecutor's proffered reasons and determined that while the reasons were "not strong," the defendant had not carried her burden to show purposeful discrimination.  *Id.* at ¶ 12.  On appeal, a majority of a division of this court remanded, concluding that, in the absence of specific credibility findings, it could neither

reasons and determined that, even setting aside the proffered

justification, there were three race-neutral reasons for striking the

juror, none of which were actually mentioned by the prosecutor.

Thus, I read the trial court's oral ruling as a finding, and a fairly

explicit one, that the prosecutor's explanation was not race neutral

and that other reasons were necessary to support the strike.

¶ 66    The parties and my colleagues interpret the court's third

reason, that Juror R.P. had an "anti-law enforcement ben[t]," not as

a new reason imagined by the trial court, but simply as another

way of characterizing the prosecutor's "anti-establishment" reason.

That distinction is not critical, though.  Whether the court accepted

the prosecutor's reason as race-neutral (and added two additional

reasons) or disregarded her reason as race-based, the de novo

---

adequately review the prosecutor's reasons nor infer that the trial
court had credited the demeanor-based reasons.  *Id.* at ¶ 16.  The
supreme court reversed.  It held that specific credibility findings are
unnecessary to affirm a step three ruling, whether the proffered
reasons are demeanor-based or non-demeanor-based.  Instead, it
instructed, an appellate court conducting a clear error review
should defer to a trial court's ultimate *Batson* ruling "so long as the
record reflects that the trial court weighed all of the pertinent
circumstances and supports the court's conclusion" regarding
purposeful discrimination.  *Id.* at ¶ 32.

43

inquiry at this second step is the same — accepting what the prosecutor said as true, was her proffered reason race-neutral or race-based?

¶ 67 In answering that question, I do not accept that the prosecutor offered multiple independent reasons for the strike. She did not say, for instance, that Juror R.P. had a mustache, lacked a science background, was nervous during voir dire, and expressed anti-establishment views. Those are separate reasons for striking a juror. Rather, the prosecutor's long explanation, including her single demeanor-based reference (Juror R.P.'s "hesitation" about the effect of his views of the system on his evaluation of the evidence) related exclusively to Juror R.P.'s "distinctive leaning" and boiled down to a simple proposition: As a "person of color" who had concerns about the criminal justice system, Juror R.P. was likely to "steer the jury toward a race-based reason why Mr. Ojeda," who was himself "a person of color," was "charged in the case."

¶ 68 That a juror holds "anti-establishment" or "anti-law enforcement" views can be a race-neutral reason for a strike. *See People v. Friend*, 2014 COA 123M, ¶ 17 (holding that striking a

prospective juror because she had a bad experience with law enforcement was a sufficiently race-neutral justification), *aff'd in part and rev'd in part on other grounds*, 2018 CO 90. And here, if the prosecutor had said only that the strike was based on Juror R.P.'s observation about the disproportionate incarceration rates of people of color and people with mental health disorders, I would agree that the reason was race neutral. People of all races have observed this state of affairs and expressed concern about it.

¶ 69    But the prosecutor went further. She explicitly tied Juror R.P.'s race to his views on the justice system. It was not just that Juror R.P. had concerns about the system; it was also that he was a person of color, like the defendant, and the combination of those facts made it more likely that he would find a "race-based" reason for the prosecution and then try to persuade the other jurors to adopt his view.

¶ 70    Contrary to the People's assertion, Juror R.P. did not attribute his views of the criminal justice system to his race. He attributed his knowledge of the system to his work with "communities of color." Only the prosecutor articulated a connection between Juror

R.P.'s status as "a person of color" and his so-called "anti-establishment" views. Thus, I am not convinced by the People's argument that "expressly biased jurors would be insulated from peremptory challenges whenever they pointed to their own race as a reason for a worldview that favored one party or the other." In those cases, I agree with the People that the juror's biased worldview, regardless of his or her race, would provide a race-neutral reason for a peremptory strike. But if the prosecutor, not the juror, attributes the juror's worldview to his or her race, or links the juror's race and worldview to the defendant's race, then the prosecutor's proffered "worldview" reason is unlikely to be race neutral. *See, e.g., United States v. Bishop*, 959 F.2d 820, 822-26 (9th Cir. 1992) (prosecutor's reason for striking black juror — because she lived in Compton and therefore likely believed that the police "pick on black people" — was not a race-neutral reason where the juror had not expressed any view of the police); *see also Batson*, 476 U.S. at 104 (Marshall, J., concurring) (The exclusion of black jurors cannot be justified by "a belief that blacks are less

likely than whites to consider fairly or sympathetically the State's case against a black defendant.").

¶ 71    So, is a "discriminatory purpose" "inherent" in the prosecution's explanation?  A "discriminatory purpose" exists when the decision-maker selects a particular course of action "at least in part" because of its adverse effect on an identifiable group.  A purpose is "inherent" in an explanation if it is "essential" or "intrinsic" to the explanation.  *See* Webster's Third New International Dictionary 1163 (2002).  In my view, that the prosecutor struck Juror R.P. at least in part because of his race is intrinsic to her explanation.  Thus, I conclude that the prosecutor did not meet her burden at step two of the *Batson* analysis to proffer a race-neutral reason for striking the juror.

C.

¶ 72    Discriminatory purpose is not the same as discriminatory animus.  A defendant need not show that the race-based strike was motivated by the lawyer's prejudice or animus.  And here, I do not think the record supports any inference that the prosecutor

47

harbored ill will or prejudice toward Juror R.P. or any other person of color.

¶ 73    *Batson*'s rule prevents either party from striking jurors "on account of their race."  476 U.S. at 89.  The notion that jurors of a particular race or gender will be partial to one side or the other merely "on account of" their race or gender is generally based on "crude, inaccurate" stereotypes.  476 U.S. at 104 (Marshall, J., concurring).  Sometimes, the use of those stereotypes in jury selection will demonstrate the worst kind of invidious bigotry.  *See Neal v. Delaware*, 103 U.S. 370, 393-94 (1880).  But more often, a lawyer's reliance on stereotypes to ferret out sympathetic jurors "reflect[s] a professional effort to fulfill the lawyer's obligation to help his or her client."  *Dretke*, 545 U.S. at 271 (Breyer, J., concurring).

¶ 74    In a child abuse case, for example, a female prosecutor may rely on the stereotype of women as more nurturing to strike male jurors from the jury.  But if the accused is a new mother, the prosecutor may think it best to strike women, who might sympathize with a young mother's plight.  A black prosecutor may

assume that black male jurors are likely to have had bad experiences with police officers and strike them from the jury in any case that turns on a police officer's testimony. *See id.* at 270-71 (referencing professional materials that promote jury selection based in part on race, nationality, and gender). The first prosecutor is not a sexist and the second is not a racist.

¶ 75 "Nevertheless, the outcome in terms of jury selection is the same as it would be were the motive less benign." *Id.* at 271. And so, *Batson* must be strictly enforced to ensure that any race-based strike is prohibited. But equating a discriminatory purpose for exercising a strike with discriminatory animus on the part of the striking party undermines the goals of *Batson.*

¶ 76 If a showing of racial animas is necessary, certain lawyers may enjoy a sort of immunity from *Batson* objections. The female prosecutor who strikes women jurors is unlikely to be challenged as a sexist, and the black prosecutor who strikes black male jurors is unlikely to be confronted as a racist. But more importantly, enforcement is already hampered by the implication that a lawyer's use of a race- or gender-based strike reveals bigotry or immorality.

I suspect that trial judges hesitate to sustain *Batson* challenges, when they otherwise might and should, because such a ruling is seen as tantamount to calling the prosecutor a racist. Perpetuation of that misconception allows more, not fewer, race-based strikes to go unchecked.

## IV. Conclusion

¶ 77 In this case, I conclude that the prosecutor's reason for striking Juror R.P. was based in part on his race. I do not conclude that it was based in any part on racial animus of the prosecutor. Nonetheless, because the result is the same, I agree with Judge Fox that Ojeda's conviction must be reversed, and the case remanded for a new trial.

JUDGE HAWTHORNE, dissenting.

¶ 78    Because I disagree on procedural grounds with how the majority and concurrence decide this case given the record before us, I respectfully dissent.

¶ 79    In *People v. Rodriguez*, 2015 CO 55, ¶ 1, the Colorado Supreme Court specifically "consider[ed] how both trial and appellate courts should determine whether a party has used a peremptory challenge to purposefully discriminate against a prospective juror on account of [his or] her race."  This is precisely the challenge Ojeda brings, so I believe that *Rodriguez* controls.

¶ 80    Unlike the majority and concurrence, however, I disagree that the cold record is sufficient as is for us to decide the merits of Ojeda's challenge under *Batson v. Kentucky*, 476 U.S. 79 (1986). And that's because the trial court's *Batson* analysis was inadequate in that it failed to make sufficient factual findings about (1) whether Ojeda "ma[d]e a prima facie showing that the peremptory strike was based on [Juror R.P.'s] race"; (2) whether the prosecutor provided a race-neutral explanation; or (3) whether, ultimately, Ojeda established purposeful discrimination.  *See Rodriguez*, ¶¶ 10-12. Under these circumstances, *Rodriguez* requires us to remand the

case to the trial court with directions that it conduct the three-step *Batson* analysis and make the required factual findings. *See id.* at ¶ 2 ("[T]he proper remedy for an inadequate inquiry into a *Batson* challenge at the time of jury selection is to remand the case to the trial court with directions to conduct the three-part *Batson* analysis and make the required factual findings.").

¶ 81 So, I disagree with the majority and concurrence's agreed-upon remedy. I would follow supreme court precedent — as we must — and remand the case.

## I. *Relevant Facts*

¶ 82 The prosecutor first challenged Juror R.P. for cause on three grounds: (1) "the content of his questionnaire"; (2) "his remarks that he made in open court"; and (3) "his demeanor." She explained that Juror R.P. had expressed a "bias" against the system and "visibly showed hesitation" when asked whether he could be fair. Expanding further on these reasons, the prosecutor explained that,

> With regard to what he put on his questionnaire, I found it to be significant. I can't recall the exact language, but he has devoted his career to — it's not listed on the questionnaire, but he had explained to us in chambers that it has to do with a quality of healthcare for individuals.

And that, in my mind, very much dovetailed with his — he's not a forceful speaker in the sense that he raises his voice, but he is a man of very great conviction. And what he talked about is that he had — he used the word "bias" against the system. He gave our system the lowest rating of anyone who has been asked to offer a score. I believe his score was 4.

And when I asked him about the linkage between his low confidence in the system and whether or not he could be fair, he visibly showed hesitation. He did not speak as readily or in the same way that he previously had. He said it would impact his ability to listen to both sides.

And I believe that when you look at that in-court behavior against what is clearly his commitment to his job, in terms of serving people of color and what he talked about in terms of the defendant being a person of color — he is himself a person of color — I thought that the totality of the record indicated that he has a distinctive leaning, that he himself said he would have trouble in listening to the evidence.

¶ 83    Defense counsel responded that the prosecutor was mischaracterizing Juror R.P.'s answers and that Juror R.P. had indicated he could be objective. Defense counsel added that Juror R.P. was also one of the few Hispanic males on the prospective jury and that counsel didn't "know that it's appropriate to exclude him

just because he's Hispanic and may have something in common with the defendant in his heritage."

¶ 84     The court denied the for-cause challenge, finding that there wasn't anything in Juror R.P.'s feelings or life experiences indicating he wouldn't follow the court's rules or reach a verdict based on the evidence.  The court also noted that "[t]here's a completely inadequate record to challenge him in this case."  The prosecutor then requested that the court repeat its ruling "with regard to the *Batson* issue," and the court clarified that it "didn't really reach [that] issue."  Instead, it "didn't think it was a founded challenge, regardless of [Juror R.P.'s] personal ethnicity.  I just thought that he had attitudes that he was certainly entitled to have, and that there was not anywhere near a sufficient record that they would affect his ability to be a fair juror."  Juror R.P. wasn't questioned again before the parties exercised their peremptory challenges.

¶ 85     The prosecutor used her fifth peremptory challenge to excuse Juror R.P.  Defense counsel asserted a *Batson* challenge because he was "obviously concerned about excusing Hispanic males from the jury."  In response, the prosecutor first incorporated her previous statements as to Juror R.P., then gave the following explanation:

To be utterly disclosing, we are pursuing a strategy of trying to select jurors who are establishmentarian, let's say, who are in favor of the system that we have. And that's one of the reasons I used a rate-the-system type of device during my voir dire.

[Juror R.P.] gave our system the lowest rating possible — rather, the lowest rating that anyone had given, which was a number 4, which is a matter of some concern.

What we anticipate by way of evidence, Judge, that is influencing this race-neutral strike is that the jury is going to hear that there were errors on the part of the police department in terms of not having been able to locate the rape kit in this case within the property bureau for a period of years. I anticipate some very vigorous cross-examination of one of the DNA — not a DNA analyst, but a forensic serologist, in particular, and I anticipate that the defense is going to be very strongly attacking the Denver Police Department, the Denver Police Crime Lab, and that it will really build on the statements that have already been made during jury selection that critique the system as a whole as a way to build reasonable doubt in to secure a not guilty verdict.

And so what [Juror R.P.'s] concerns were about the system — and he said, I have a bias against the system. And so the concerns that we have do not relate in any way to the color of the skin or his national origin, but rather to his stated reservations in that regard when we know what the evidence will be and when we are now getting some pretty strong clues about what the defense will be.

¶ 86    The prosecutor continued by noting the racial composition of the jury box and of the group of prospective jurors recently struck by the defense.  She then added:

> Your Honor, if I could wrap up with two other thoughts that are very strongly informing our desire to exercise a strike as to [Juror R.P.].  He's a polished, educated, and, I believe, persuasive individual.  And because of his presentation in that regard, the concern that we have is that the critique of the criminal justice system that he has talked about, he could be very, very strongly persuasive in the jury room.  That's race neutral.  We see him as a person who could very much persuade others of the reservations that he has.  And given what we anticipate by way of the evidence, that is the basis for attempting to eliminate him.
>
> The other item, which is a slightly different concept, is that I anticipate the defense is going to make a very strong charge against the validity and reliability of the DNA results.  And I believe that they are going to say that it was some unnamed individual who did this violence against [the victim].  And the fact that the defendant is a Latino male, if the jury is persuaded that there is not a DNA connection between the defendant — or excuse me, between the forensic evidence in this case and this defendant, it seems to me that the comments that [Juror R.P.] made about having concerns about racial profiling will really come into play in the sense that I think that he may then steer the jury towards a race-based reason why Mr. Ojeda, you know, was charged

56

in the case, and that is because he talked about that — [Juror R.P.] had talked about racial profiling in conjunction with his other considerations. Since I think that's where the defense is going — you know, we have to forecast at this stage of the game, and those are all of the race-neutral reasons why we believe that a strike is constitutional and not racially motivated as to [Juror R.P.].

¶ 87  Defense counsel responded that "[w]ith respect to [Juror R.P.], I think [the prosecutor] made my argument for me. She's concerned about a race-based argument being made by [Juror R.P.] because he's Hispanic." The court then made its ruling:

> The Court will deny the challenge for cause as to [Juror R.P.], but there are abundant race-neutral reasons for a peremptory to be exercised. First of all, he too is a victim of a sex assault, as is his wife, and he struck the Court as remarkably unconcerned about those events in his own lifetime. His first thought when there was a discussion of the time it's taken to bring this case was that the victim had delayed disclosure. He does have an anti-law enforcement bend, so the Court finds there's a sufficient racially neutral basis for the challenge.

¶ 88  Immediately following the court's ruling, the prosecutor supplemented her record by noting that she had in her notes that when Juror R.P. heard the age of the case, he thought something might have gone wrong, which also caused her "particular concern."

## II. The Batson *Analysis*

¶ 89 Following *Rodriguez*, I believe that "[t]he proper remedy in this case depends upon whether the trial court *completed* the *Batson* analysis but made a clearly erroneous ruling as to the existence of racial discrimination, *or* whether the court conducted an *inadequate Batson* analysis." *Rodriguez*, ¶ 7 (emphasis added). Said another way, the threshold question is: Did the trial court make sufficient factual findings to allow us to determine whether Ojeda established that the prosecutor struck Juror R.P. because of his race? *Id.* I think the answer to that question is clearly "no."

¶ 90 The Equal Protection Clause of the Fourteenth Amendment forbids a challenge to a potential juror based solely on race. *Batson*, 476 U.S. 79; *People v. Wilson*, 2015 CO 54M, ¶ 10 n.4. When a party raises a *Batson* challenge, the trial court should engage in a three-step analysis to assess the claim of racial discrimination and determine whether *the defendant* has proven such claim. *Wilson*, ¶ 10; *Rodriguez*, ¶ 9.

¶ 91 *Rodriguez* lays out *Batson*'s framework and explains its three steps in detail, as do my colleagues, so I won't repeat it all again.

Instead, I'll only reiterate what I believe is most relevant to this case.

¶ 92    The first step, requiring that "the defendant must make a prima facie showing that the peremptory strike was based on the prospective juror's race," *Rodriguez*, ¶ 10, isn't challenged here.  Not by the People, the majority, or the concurrence.  Still, I note that, at step one, the burden is on *the defendant* and the trial court should make a record about whether he or she has satisfied that burden before proceeding to step two.  *See Batson*, 476 U.S. at 96 ("In deciding whether the defendant has made the requisite showing, the trial court should consider all relevant circumstances."); *Rodriguez*, ¶ 13.

¶ 93    If the defendant successfully makes a prima facie showing, the burden shifts at step two to the striking party — here, the People — to provide a race-neutral explanation for excusing the prospective juror.  *Rodriguez*, ¶ 11.  While the prosecutor "must do more than deny a discriminatory motive or affirm his [or her] good faith . . . . [t]o pass muster, the explanation need not be 'persuasive, or even plausible, as long as it does not deny equal protection."  *Id.* (quoting *Purkett v. Elem*, 514 U.S. 765, 768 (1995)).  "Nothing more is

required for the inquiry to proceed to step three." *Id.* But again, the trial court should make a record stating whether the prosecutor has met his or her burden before moving on.

¶ 94 At step three — after the defendant has an opportunity to rebut the prosecutor's race-neutral explanation — the trial court "must decide the ultimate question: whether *the defendant* has established purposeful discrimination." *Id.* at ¶ 12 (emphasis added).

¶ 95 It is at this stage that the trial court must assess the prosecutor's actual subjective intent and the plausibility of her nondiscriminatory explanations to determine whether the defendant has sufficiently established purposeful discrimination. *Miller-El v. Dretke*, 545 U.S. 231, 252 (2005); *see Hernandez v. New York*, 500 U.S. 352, 378 (1991) ("[T]he Court has imposed on the defendant the added requirement that he generate evidence of the prosecutor's actual subjective intent to discriminate."); *Rodriguez*, ¶ 12 ("It is at this stage that 'implausible or fantastic [step-two] justifications may (and probably will) be found to be pretexts for purposeful discrimination.'" (quoting *Purkett*, 514 U.S. at 768)).

¶ 96    The trial court's ruling at step three "should be based on its evaluation of the prosecutor's credibility and the plausibility of his [or her] explanation." *Rodriguez*, ¶ 12.  If the prosecutor's "stated reason does not hold up, its pretextual significance does not fade because a trial judge . . . can imagine a reason that might not have been shown up as false." *Dretke*, 545 U.S. at 252.

### III.    Standard of Review

¶ 97    "[E]ach step of the trial court's *Batson* analysis is subject to a separate standard of review." *Rodriguez*, ¶ 13 (citing *Valdez v. People*, 966 P.2d 587, 590 (Colo. 1998)).

¶ 98    At step one, "the reviewing court considers de novo whether the defendant established a legally sufficient prima facie case — though it should defer to the trial court's underlying factual findings." *Id.*  Step two, "the facial validity of the prosecutor's justification" is also reviewed de novo, again with deference given to the trial court's factual findings. *Id.*

¶ 99    Then, at step three, the trial court's "determination as to the existence of racial discrimination is an issue of fact to which an appellate court should defer, reviewing only for clear error." *Id.* "Since the trial judge's findings in the context under consideration

here largely will turn on evaluation of credibility, a reviewing court ordinarily should give those findings great deference." *Batson*, 476 U.S. at 98 n.21.

### IV. *The Trial Court's Findings (Or Lack Thereof)*

¶ 100 "To determine whether we can conclude that [the] strike violated *Batson*, we evaluate the adequacy of the trial court's findings." *Rodriguez*, ¶ 14.

¶ 101 I begin with *Batson*'s step one, where Ojeda "must make a prima facie showing that the peremptory strike was based on" Juror R.P.'s race. *Id.* at ¶ 10. After the prosecutor moved to peremptorily strike Juror R.P., defense counsel immediately challenged the strike under *Batson*. He argued, "I am obviously concerned about excusing Hispanic males from the jury." At that point, the trial court should have made — but didn't — findings about whether Ojeda satisfied his step-one burden. Rather, it allowed the prosecutor to respond. The prosecutor immediately jumped to *Batson*'s step two, where she articulated her race-neutral rationale for the strike. And after she did so, the trial court again should have made — but didn't — findings about whether her explanation "pass[ed] muster." *Id.* at ¶ 11. Instead, it merely asked defense

counsel if he had "anything further?"  Defense counsel promptly replied that, as to Juror R.P., "I think [the prosecutor] made my argument for me.  She's concerned about a race-based argument being made by [Juror R.P.] because he's Hispanic."  The court then launched into its purported step-three ruling.

¶ 102     Although our review at steps one and two is de novo, we're nonetheless required to "defer to the trial court's underlying factual findings" in conducting that review.  *Id.* at ¶ 13.  But where there aren't any factual findings because the court's *Batson* analysis was incomplete, and therefore inadequate, we can't simply stand in for the trial court and make factual findings of our own.  Under those circumstances, *Rodriguez* requires us to remand the case to the trial court so that *it* may make the required factual findings.  At that point, we can properly proceed with our de novo review.  *See id.* at ¶¶ 2, 13.

¶ 103     Finally, at step three, our review of the court's ruling "as to the existence of racial discrimination is an issue of fact to which [we] should defer, reviewing only for clear error."  *Id.* at ¶ 13.  This is because the court's step-three determination turns largely on "its evaluation of the prosecutor's credibility and the plausibility of his

[or her] explanation." *Id.* at ¶ 12; *see also Wilson,* ¶ 13 ("The inquiry at step three requires the trial court to decide whether to believe counsel's race-neutral explanation for a peremptory challenge. 'The best evidence often will be the demeanor of the attorney who exercises the challenge,' evaluation of which lies 'peculiarly within a trial judge's province.'" (quoting *Hernandez,* 500 U.S. at 365)) (alterations omitted).

¶ 104    But again, the trial court's step-three analysis was inadequate. Unlike at steps one and two, the court did make some findings at step three. It offered — sua sponte — two race-neutral reasons for striking Juror R.P.: (1) that R.P. and his wife were not only sexual assault victims themselves, but that R.P. seemed "remarkably unconcerned" about those life experiences; and (2) that R.P. surmised the age of the case might have been because of the victim's delayed disclosure. Although the prosecutor agreed with the second reason after the court made its *Batson* ruling, neither reason was initially given as a basis for the prosecutor's exercise of a peremptory challenge. And, it's improper for a trial court to "sua sponte offer[] its own plausible reasons behind the peremptory strike[] at issue." *Valdez,* 966 P.2d at 592 n.11; *see also Dretke,*

64

545 U.S. at 252 ("The Court of Appeals's and the dissent's substitution of a reason for eliminating [the juror] does nothing to satisfy the prosecutors' burden of stating a racially neutral explanation for their own actions."); *Rodriguez,* ¶ 15 n.5 (concluding that the trial court never evaluated the validity of the prosecutor's justification because it based its ruling on a different race-neutral explanation than the one offered by the prosecution).

¶ 105    So, arguably, the only mention the court made to a reason stated by the prosecutor was that Juror R.P. had an "anti-law enforcement bend."  The court didn't mention or evaluate the prosecutor's credibility, demeanor, or intent.  Nor did it evaluate Juror R.P.'s demeanor, given the prosecutor's demeanor-based reasons for the strike, including that he "visibly showed hesitation" and didn't "speak as readily" in response to questions about whether he could be fair.  And, it didn't consider the plausibility or persuasiveness of the *prosecutor's* explanations for the strike.

> Especially at step three, the trial court's firsthand observations are crucial: it "must evaluate not only whether the prosecutor's demeanor belies a discriminatory intent, but also whether the [prospective] juror's demeanor can credibly be said to have

exhibited the basis for the strike attributed to
the [prospective] juror by the prosecutor."

*Rodriguez*, ¶ 18 (quoting *Snyder v. Louisiana*, 552 U.S. 472, 477
(2008)); *see also Wilson*, ¶ 18 ("Only the trial court can assess
non-verbal cues, such as hesitation, voice inflection, and facial
expressions, that are not recorded on a transcript.").

¶ 106 Absent adequate findings, I don't think we should stand in the
trial court's shoes and, relying on the cold record, say whether the
prosecutor struck Juror R.P. because of his race. *See Rodriguez*,
¶¶ 17-18 (where the trial court didn't make the necessary findings
at steps one, two, or three, "it is impossible for a reviewing court to
tell whether the prosecutor struck [the juror] because of her race").
The need for the trial court's factual findings at each step is made
more apparent by this very opinion where, absent such findings,
three judges on this court are divided about how to interpret the
prosecutor's words.

## V. Conclusion

¶ 107 I believe that the proper remedy is for us to remand the case to
the trial court and allow it to conduct the three-part *Batson*

analysis and make the required factual findings at each step.  The

Colorado Supreme Court in *Rodriguez* put it best:

> An inadequate analysis by the trial court does
> not equate to a constitutional violation by the
> prosecutor, and it should not call for the same
> remedy.  The passage of time may create
> challenges for the trial court on remand, but
> those challenges do not alter the structure of
> the *Batson* analysis or relieve [the defendant]
> of his burden.  The only way to determine
> whether racial discrimination tainted the
> prosecutor's use of peremptory challenges is
> for the trial court to conduct further
> proceedings as it deems necessary on remand
> and complete the *Batson* analysis.

*Id.* at ¶ 20 (citations omitted).  For these reasons, I respectfully

dissent.